Leonard J. Ruck, Inc., et al. 1 v. Commissioner. Leonard J. Ruck, Inc. v. CommissionerDocket Nos. 1035-67 - 1038-67.United States Tax CourtT.C. Memo 1969-16; 1969 Tax Ct. Memo LEXIS 280; 28 T.C.M. (CCH) 63; T.C.M. (RIA) 69016; January 27, 1969, Filed Stanley Worth and Jules G. Korner, III. Suite 407 Barr Bldg., Farragut Sq., Washington, D.C. for the petitioners. Joseph N. Ingolia, for the respondent. TIETJENSMemorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in income tax in these consolidated proceedings as follows: PetitionerTaxable YearDeficiencyEndedLeonard J. Ruck, Inc3-31-64$38,019.27Docket No. 1035-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,631.20Margaret L. Ruck12-31-631,047.47Docket No. 1037-6712-31-642,070.59Bernard C. Ruck12-31-631,234.18Docket No. 1038-6712-31-641,469.09 Harford Auto Rental Company, docket No. 1036-67, has conceded the deficiencies in income tax determined for the fiscal years ended March 31, 1964 and 1965. Leonard J. Ruck, Inc., has conceded an issue involving a rental expense deduction. We must decide to what extent compensation paid by Leonard J. Ruck, Inc., to its shareholder-officer-directors in the fiscal years ended March 31, 1964 and 1965, constitutes an ordinary and necessary expense which is properly deductible by the corporation under*282 section 162(a)(1) of the Internal Revenue Code of 1954. We must also decide whether the value of lodging separately furnished by the corporation to Margaret L. Ruck and Bernard C. Ruck in the years 1963 and 1964 shall be excluded from their respective gross incomes under section 119 of the Internal Revenue Code of 1954. Findings of Fact Some of the facts have been stipulated and are so found. The stipulation and the exhibits attached thereto are incorporated herein by this reference. Leonard J. Ruck, Inc. (hereinafter referred to as Ruck, Inc.) is a corporation engaged in the undertaking and funeral directing business. Its principal place of business is at Baltimore, Maryland. Its corporate income tax returns for the fiscal years ending March 31, 1964 and 1965 were filed with the district director of internal revenue, Baltimore, Maryland. Margaret L. Ruck (hereinafter referred to as Margaret) and Bernard C. Ruck (hereinafter referred to as Bernard) resided in Baltimore, Maryland, at the time they filed their petitions herein. Their individual income tax returns for the calendar years 1963 and 1964 were filed with the district*283 director of internal revenue, Baltimore, Maryland. Ruck, Inc. was established as a proprietorship in 1924 by Leonard J. Ruck (hereinafter referred to as Leonard) and Margaret, his wife. Leonard managed the business from its inception. Until his death in 1962, he made the final decisions and was the driving force behind the operation of the business. In the early days Leonard and Margaret used their home as a funeral parlor. The first year they performed two funerals. Over the years the business expanded. As their children - Leonard F. (hereinafter called Francis), Eugene, Margaret R. (hereinafter called Mary), and Bernard - grew up and finished high school, they came to work in the family business. Prior to 1954 a partnership was formed which included all the family members, 64 save Bernard, the youngest. In 1954 the business was incorporated as Leonard J. Ruck, Inc. Leonard became president. The family members became the sole officers and directors, save Bernard, who became an officer and director in 1955 when he came to work upon completion of his Naval service. The business had grown and prospered from its modest origin. It now has one of the largest volumes of business*284 of any funeral home in this country: Leonard J. Ruck, Inc.Per ReturnsFiscal YearNumberGrossLessGrossofEnded 3/31FuneralsReceiptsAdvancesSales1959997$728,325.47$138,469.66$ 589,855.8119601,086809,412.59147,817.56661,593.0319611,122892,845.54154,930.86737,914.6819621,157959,699.73167, 807.32791,892.4119631,2421,109,712.15192,324.03917,388.1219641,2221,132,303.95170,053.16962,250.7919651,2751,224,500.68187,389.461,037,111.22 The item of "Advances" represents cash advances to clients for such items as death notices to newspapers, gratuities to clergymen and others, fees for certified copies of death certificates, and the like. The undertaking business involves a close personal relationship between the funeral director and members of the bereaved family. The management policy of Ruck, Inc. was to have "a Ruck on every funeral." Personal attention by a Ruck in making arrangements and in conducting funerals was considered essential. Because it is considered professionally unethical for a funeral home to advertise in the newspaper or by similar commercial means, *285 the Rucks sought to promote their business through direct contact with persons in their community. The Lions Club occasionally met in a clubroom in Margaret's home. During the years before us the business conducted in excess of 1,000 funerals per year. The funeral home performs numerous services in connection with each funeral, including: the receiving of telephone calls notifying the funeral home of a death; the first visit to the house of the deceased; the removal, embalming, and dressing of the deceased; making arrangements and conducting the funeral. As deaths occur at all hours, Ruck, Inc. always had someone available to answer the phone. The business was conducted in shifts of three or more persons. A minimum of three was necessary - one to man the phone and two to make removals. The funeral home phones rang in Margaret's home and in Bernard's house. Calls were usually answered in the funeral home by one of the shift employees. Because of the large number of funerals it handled, Ruck, Inc. employed a large staff of non-family professionals and employees. Daniel Mulheran, Howard Lyons and Joseph France were the principal nonfamily professionals. Mulheran supervised the office, *286 made funeral arrangements, embalmed and supervised a shift. Lyons and France embalmed and directed funerals. The policy of "a Ruck on every funeral" did not continue in force during the years here involved. Mulheran, Lyons of France would often conduct funerals without the assistance of a Ruck. The non-family employees did almost all of the embalming. For the fiscal years ended March 31, 1964 and 1965, the compensation, including overtime, paid to Daniel Mulheran, Howard Lyons and Joseph France was as follows: Fiscal YearEnded 3/31/64MulheranLyonsFranceSalaries$12,160.00$13,361.67$9,900.00Pension Payments1,442.423,119.651,465.09Total$13,602.42$16,481.32$11,365.09Fiscal Year Ended3/31/65MulheranLyonsFranceSalaries$14,872.00$16,224.00$11,627.20Pension Payments1,978.874,172.801,950.77Total$16,850.87$20,396.80$13,577.97 65 The operation of the funeral home includes, too, the merchandising of caskets, the purchasing of equipment and supplies, and the maintenance of the physical premises of the home. While the funerals had previously been conducted in Leonard and Margaret's residence*287 at 5309 Harford Road, the corporation had built a new and modern funeral home on land adjacent to the residence. This new building and the additions thereto were extensive and contained facilities to accommodate 21 families in separate reposing rooms. For the fiscal years 1960 through 1965, Ruck, Inc. had capital investments in plants, facilities, and equipment (figures before depreciation) as follows: FurnitureEquipmentYearBuildingsand Fixturesand OtherTotal1960$279,412.20$29,570.67$55,033.53$364,016.401961442,828.0652,764.4286,081.71581,674.191962448,431.2254,59 0.03101,062.62604,083.871963443,306.9031,788.11115,387.91590,482.921964525,612.1338,596.65134,310.06698,518.841965526,363.8145,737.87140,296.19712,397.87Prior to Leonard's death in 1962, Mrgaret had no specific duties in the operation of the family business. She did not arrange or conduct funerals, nor did she embalm or sell caskets. She was available to discuss problems as they arose. After her husband's death and during the years in question, Margaret continued to be available around the funeral home to discuss problems. *288 She maintained an office in the funeral home. She was in her office every morning from 7:30 until 8:00. Margaret occasionally signed corporate checks. She kept watch on the state of cleanliness and overall appearance of the funeral home premises. Her wide acquaintance with community families, and her knowledge of the family backgrounds and relations of deceased persons were helpful to the business. She occasionally received in her home visitors to the funeral parlor. The funeral home maintained telephones in Margaret's home. She handled an occasional night call. Francis, as executive vice president of Ruck, Inc. during these years, was the active head of the business. As a licensed funeral director and embalmer, he conducted funerals and made arrangements. He took care of the casket merchandising. On occasion he supervised embalming. Eugene was vice president. As a licensed funeral director and embalmer, he conducted funerals, made arrangements, supervised embalming and also did public relations work. He had authority to purchase equipment and supplies for the embalming department. Eugene was very well known amongst embalmers and had the reputation as being the kind of man that*289 could do anything in an embalming room. As a cosmetologist, he was particularly expert in the repair of accident, fire and mutilated death cases. After his father's death in 1962, Eugene was absent from work for extended periods of time. From January 3, 1963, until his death in August 1964, Eugene worked only very sporadically - when he felt well enough to come in. For 10 months during this period, he was confined to Taylor Manor Hospital in Baltimore. Taylor Manor, a private psychiatric hospital, takes care of persons suffering from chronic nervousness and alcoholic conditions. During 1963 and 1964, Engene was observed in the funeral home when he had had something to drink. He was never intoxicated on the first floor of the funeral home when the public was present. By March 1963, Eugene's duties were largely assumed by Howard Lyons, a non-family employee. Eugene continued to be paid his full salary until his death in August 1964. Mary was secretary-treasurer. She was in charge of the office. She handled the accounts and supervised the office personnel. She made arrangements for funerals, arranged details with clergyman, cemeteries, and newspapers. She sent the bills, collected*290 them, and followed up on accounts that were past due. She made out the schedule and assignments of funerals. She assisted families in perfecting their insurance claims and in securing their veterans benefits. She was in direct contact with the familes and was quite successful in maintaining good public relations. She also selected the burial garments. Mary was absent from work from August 1963 until September 1964. She was admitted to Taylor Manor Hospital for treatment as an in-patient October 8, 1963, and was discharged September 12, 1964. During Mary's absence, Daniel T. Mulheran, a non-family employee, took over a substantial part of her duties in the office. 66 Mary continued to be paid her full salary during her absence from work. Bernard was vice president. A licensed funeral director and embalmer and a graduate of a mortuary school, Bernard arranged and conducted funerals. He made first calls and removals, did some of the buying and, on occasion, he scheduled funerals. He was responsible for building maintenance. He did some work in the area of personnel management. The corporation had an informal policy of continuing to pay wages to its employees during their absence*291 from work due to illness. While this pracitice was known to the employees, it was never explicitly promised to them and the employees had no legal rights to such continued wages. The corporation fired employees for drunkenness. After the new funeral home was built, Leonard and Margaret continued to live at 5309 Harford Road. The house consists of two stories containing a central hall, a living room, dining room, kitchen, three bedrooms, a sitting room,a club basement, and a two-room annex with its own outside entrance. The dining rom was used for occasional family gatherings when business would be discussed, and for more formal meetings of the family as corporate directors. A recreation room in the basement was used for meetings of the Lions Club. The annex, which occupied about one-quarter of the total space in the house, was used as the bookkeeper's office. After Leonard's death in 1962, Margaret continued to live at 5309 Harford Road, which was titled in the name of Ruck, Inc. Telephone lines to the funeral home were interconnected to the downstairs and also to Margaret's bedside. There was also a separate intercommunication system from this residence to the funeral home. In the*292 years 1963 and 1964, respectively, Ruck, Inc. paid $1,704.36 and $3,377.07 for expenses of maintaining Margaret's residence. In 1958, the corporation acquired a home at 3004 Echodale Avenue, adjoining the funeral home property on one side. Bernard lived there with his wife and child until November of 1963, when his wife left him. Bernard continued to live there. An intercom and telephones connected to the funeral home and to 5309 Harford Road were placed in the home. In the years 1963 and 1964, respectively, Ruck, Inc. paid $2,822.04 and $2,819.99 for maintenance of Bernard's residence. In 1964 and 1965, the corporation paid the following salaries to the members of the Ruck family: Fiscal YearEnded March3119641965Margaret L. Ruck$29,850$31,174Leonard F. (Francis) Ruck37,27039,676Eugene A. Ruck28,3508,400Bernard C. Ruck25,87526,390Margaret (Mary) Ruck Giordanetti25,70022,672In the same years, the corporation paid directors fees to the members of the Ruck family as follows: Fiscal YearEnded March 3119641965Margaret L. Ruck$900$900Leonard F. (Francis) Ruck900900Eugene A. Ruck225-0-Bernard C. Ruck900900Margaret (Mary) Ruck Giordanetti675525*293 Additionally, the corporation made the following contributions for the benefit of the Ruck family members to trustees under an I.R.S. approved employees pension plan: Fiscal YearEnded March 3119641965Margaret L. Ruck$9,828.56$13,180.80Leonard F. (Francis) Ruck5,146.606,379.70Eugene A. Ruck3,296.68-0-Bernard C. Ruck1,599.402,310.38Margaret (Mary) Ruck Giordanetti2,684.782,698.08 67 Ruck, Inc. paid no dividends from its inception through the fiscal year ended March 31, 1965. In determining to what extent the compensation paid to each member of the Ruck family in the fiscal years 1964 and 1965 constituted an ordinary and necessary expense properly deductible by the corporation under section 162, I.R.C. 1954, the Commissioner considered together their salaries, the pension trust contributions and directors fees to arrive at total compensation paid to each family member: Fiscal YearEnded March 3119641965Margaret L. Ruck$40,578.56$45,254.80Leonard F. (Francis) Ruck43,316.6046,955.70Eugene A. Ruck31,871.688,400.00Bernard C. Ruck28,374.4029,600.38Margaret (Mary) Ruck Giordanetti29,059.7825,895.08*294 Of these sums the Commissioner allowed the corporation to deduct the following amounts as reasonable: Allowed19641965Margaret L. Ruck$20,000$20,000Leonard F. (Francis) Ruck30,00030,000Eugene A. Ruck24,5008,400Bernard C. Ruck18,00020,000Margaret (Mary) Ruck Giordanetti16,000The Commissioner further disallowed Ruck, Inc.'s claimed section 162(a)(3) deductions for the payments made for Margaret's use of 5309 Harford Road and for Bernard's use of 3004 Echodale Avenue. The Commissioner determined deficiencies in Margaret's income tax of $1,047.47 and $2,070.59 for the taxable years 1963 and 1964, respectively. The determinations reflect the addition to Margaret's taxable income of the fair market value of her use of two-thirds of the property at 5309 Harford Road for each year, respectively. The Commissioner similarly determined deficiencies in Bernard's income tax of $1,234.18 and $1,469.09 for the taxable years 1963 and 1964, respectively, to reflect the addition to his taxable income of the fair market value of his use of 3004 Echodale Avenue. Ultimate Finding - Reasonable Compensation The following amounts are deductible*295 by Leonard J. Ruck, Inc. as reasonable compensation: 19641965Margaret L. Ruck$25,000$25,000Leonard F. (Francis) Ruck40,00042,000Eugene A. Ruck24,5008,400Bernard C. Ruck22,00024,000Margaret (Mary) Ruck Giordanetti20,00020,000Opinion Reasonable Compensation Section 162(a)(1), I.R.C. 1954, 2 provides that "a reasonable allowance for salaries or other compensation for personal services actually rendered," shall be deductible as a business expense. The Commissioner disallowed $64,701.02 and $61,455.96 of the total compensation paid by Leonard J. Ruck, Inc. to its shareholder-officer-directors, the Rucks, for the corporation's fiscal years ended March 31, 1964 and 1965, because of his determination that the actual compensation was excessive and unreasonable by those amounts, respectively, for each year. Ruck, Inc. contends the total compensation - including salaries, directors fees and pension plan payments paid to each of these persons, was reasonable in amount in view 68 of the personal services*296 actually rendered and deductible in full under the statute. Ruck, Inc. further contends that the Commissioner must consider the salaries alone in determining whether these persons were unreasonably compensated. Section 162(a)(1) allows a business to deduct all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered. As directors fees are merely a form of compensation, the Commissioner properly included them in determining whether the Ruck family members were unreasonably compensated for the services they actually rendered, including their services as directors. L.E. Pinkham Med. Co. v. Commissioner, 128 F. 2d 986 (C.A. 1. 1942), affirming a Memorandum Opinion of this Court. Similarly, we hold that the pension plan payments constitute compensation to the family members which is properly considered in determining the extent their total compensation was reasonable. Section 1.404(a)-1(b), Income Tax Regs., clearly contemplates such treatment: In order to be deductible under*297 section 404(a), contributions must be expenses which would be deductible under section 162 * * * or 212 * * * if it were not for the provision in section 404(a) that they are deductible, if at all only under section 404(a). * * * In no case is a deduction allowable under section 404(a) for the amount of any contribution for the benefit of an employee in excess of the amount which, together with other deductions allowed for compensation for such employee's services, constitutes a reasonable allowance for compensation for the services actually rendered. * * * The question of reasonableness of compensation for personal services presents a question of fact. Huckins Tool and Die, Inc. v. Commissioner, 289 F. 2d 549 (C.A. 7, 1961), affirming a Memorandum Opinion of this Court; Golden Construction Co. v. Commissioner, 228 F. 2d 637 (C.A. 10, 1955), affirming a Memorandum Opinion of this Court. The Commissioner's determination as to what constituted reasonable compensation to each of the family-member officer-shareholders for the taxable years before us carries with it a presumption of correctness. The petitioner corporation has the burden of proving error and, *298 further, has the burden of proving the reasonableness of any larger amounts claimed. Miles-Conley Co. v. Commissioner, 173 F. 2d 958 (C.A. 4, 1949), affirming 10 T.C. 754 (1948); Ben Perlmutter, 44 T.C. 382, 401 (1965). There are no fixed rules or exact standards for determining what constitutes reasonable compensation. Each case must be resolved on its own particular facts and circumstances. Golden Construction Co. v. Commissioner, supra, and authorities there cited. The taxpayer's burden is to adduce evidence as to the appropriate factors which afford a satisfactory basis for this Court to determine the value of the services rendered or the reasonableness of the claimed compensation. The presence or absence of any factors deemed necessary in the particular case will bear upon whether the taxpayer has met its burden of proof. Miles-Conley Co. v. Commissioner, supra.In the instant case, the Rucks were sole officers, directors and majority shareholders and each of their salaries was fixed within their own family group. Under such circumstances, the salaries so paid are subject to close scrutiny as to their reasonableness. *299 Heil Beauty Supplies v. Commissioner, 199 F. 2d 193 (C.A. 8, 1952), affirming a Memorandum Opinion of this Court; Ecco High Frequency Corp. v. Commissioner, 167 F. 2d 583 (C.A. 2, 1948), affirming a Memorandum Opinion of this Court. We think petitioner corporation's attempt to satisfy the burden of proof is sufficient to show error in the Commissioner's determination and to furnish a basis for increasing the amounts properly allowable as reasonable compensation. That burden, specifically, was to show the services actually rendered by each of the Ruck family members, including the amount of time devoted to those services, the manner in which the services were performed, the requisite skill involved, and generally the value of those services in terms of how much the business would be required to pay an outsider to perform them. We recognize the difficulties inherent in proving with any exactness what constitutes reasonable compensation for management skills devoted to a successful firm in a 69 competitive industry dependent to a large extent on the relationships maintained over the years by the Ruck family in the community in which they operated. Recognizing*300 this difficulty, we have endeavored to view the evidence with all possible fairness. An attempt was made to establish comparables for the compensation paid in the years before us. For this purpose, petitioner called Russell R. Davis (hereinafter called Russell), Chairman of the Board of the Federated Funeral Directors of America, to give expert testimony concerning standards of executive compensation prevailing in the funeral home industry. Russell testified "with plenty of latitude for variables" to a loose relationship between aggregate compensation paid to "owner-management" and the size of funeral businesses in terms of annual gross sales. Although Russell had no personal knowledge of what services the Rucks, individually, rendered in their business, his testimony was adequate to show that the amount we have allowed is not out of line to any substantial extent with any prevailing standards of compensation in the industry. The testimony received for the purpose of showing the actual services rendered by each of the Rucks was somewhat vague and general. However, we find that it was sufficient to establish that compensation in excess of that allowed by the Commissioner would be*301 reasonable. We are persuaded that more is allowable than the Commissioner has determined. This persuasion is reflected in our ultimate findings of fact. Lodging The fair rental value of the living quarters separately furnished by Ruck, Inc. to Margaret and Bernard is includable in their respective gross income unless some section of the Code specifically excludes it. The value of the lodging furnished Margaret was determined to be $1,704.36 and $3,377.07 for the taxable years 1963 and 1964, respectively. The value of the lodging furnished Bernard was determined to be $2,822.04 and $2,819.99 for the taxable years 1963 and 1964, respectively. The rental values were determined in each case as the sum of the depreciation on the respective properties plus the actual expenses paid by the corporation, including insurance, repairs and maintenance, taxes, water, heat and light expenses. We uphold the Commissioner's determination of the fair rental value of these properties. Margaret and Bernard argue these amounts are excludable from their respective gross incomes by virtue of section 119: MEALS OR LODGING FURNISHED FOR THE CONVENIENCE OF THE EMPLOYER. There shall be excluded from*302 gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if - (1) in the case of meals, the meals are furnished on the business premises of the employer, or (2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment. In determining whether meals or lodging are furnished for the convenience of the employer, the provisions of an employment contract or of a State statute fixing terms of employment shall not be determinative of whether the meals or lodging are intended as compensation. Without deciding whether the respective lodgings were furnished "on the business premises," we hold that neither Margaret nor Bernard were required to live in their respective homes as a condition of their employment and that this loding was not furnished to them for the convenience of Ruck, Inc. We find that as officers and directors, Margaret and Bernard furnished themselves with these residences primarily for their own convenience, and with the specific intention that the economic benefit they had conferred upon themselves*303 would be tax free. The telephones, we believe, were placed in their respective homes for their personal convenience, so they could be reached in their homes during the daytime. We do not find that Bernard handled any night calls at all. Margaret, we believe, may have handled an occasional call at night. We do not believe the business required her to handle any night calls, or that she was ever called out of her home on business during unusual hours. We hold these amounts are not excludable under section 119 from Margaret's and Bernard's respective gross incomes. Decisions will be entered under Rule 50. 70 Footnotes1. Cases of the following petitioners are consolidated herewith: Harford Auto Rental Company, Inc., Docket No. 1036-67; Margaret L. Ruck, Docket No. 1037-67; and Bernard C. Ruck, Docket No. 1038-67.↩2. All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.↩