EDWIN'S, INC., Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 73-1262.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 18, 1974.

Decided Sept. 4, 1974.

Scott P. Crampton, Asst. Atty. Gen., Michael L. Paup, Atty., Dept. of Justice, Tax Div., Washington, D. C., John O. Olson, U. S. Atty., Madison, Wis., for defendant-appellant.

Samuel Goldenberg, Milwaukee, Wis., for plaintiff-appellee.

Before SWYGERT, Chief Judge, PELL, Circuit Judge, and ESCHBACH, District Judge.*

PELL, Circuit Judge.

This is an appeal by the United States of America from the district court's decision that the amount of compensation paid by the taxpayer corporation to certain employees was "reasonable compensation" and, therefore, fully deductible from taxable income.

The taxpayer, Edwin's Incorporated, is a women's specialty store in Eau Claire, Wisconsin. Edwin and Rose Marcus originally purchased the store in 1950 and operated it as a partnership for five years. In 1955, the partnership assets were turned over to the taxpayer corporation, with Edwin and Rose each taking 50% of the taxpayer's stock.

During the period in question, Edwin Marcus was the taxpayer's president and acted as its general manager, credit manager, buyer, financial director and merchandise manager. Rose Marcus was the taxpayer's vice-president and acted as store manager when Edwin was absent; managed the Bridal Shop; wrote, directed, and performed in the taxpayer's television advertising; and purchased certain merchandise for the store. Rose and Edwin's son, Jeff Marcus, worked for the taxpayer as assistant manager.

During the fiscal years ending January 1, 1966 and 1967, the taxpayer paid Edwin and Rose each a salary of $24,000 per year. In addition, Edwin and Rose each received an annual bonus equal to 20% of the corporation's net income before taxes.[1] Jeff Marcus was paid a straight salary of $15,000 in 1966 and $18,000 in 1967 but received no bonus. The taxpayer also contributed amounts to a pension plan for all three Marcuses, the total of such pension payments being $8,905.01 in 1966 and $12,322.49 in 1967.[2] The total deductions taken by the taxpayer as compensation on behalf of the Marcuses were $88,277.47 in 1966 and $93,041.35 in 1967.[3] The Commissioner determined that reasonable compensation would be $65,200.00 for each year.[4] The taxpayer paid the additional tax assertedly due and sued for a refund.

Following a bench trial, the district court found that the salaries and bonuses paid to Edwin and Rose and the salary paid to Jeff were reasonable. The district court also concluded that it need not consider the payments made by the corporation to the pension plan as compensation in determining whether the Marcuses were unreasonably compensated. The Government, appealing from this decision, raises essentially two issues: (1) whether the district court erred in finding the salaries and bonuses reasonable in amount; (2) whether the

---

* Judge Jesse E. Eschbach of the Northern District of Indiana is sitting by designation.

1. Edwin and Rose Marcus each received as a bonus $8,186.23 in 1966 and $7,359.43 in 1967. The total salary plus bonus for each was, therefore, $32,186.23 in 1966 and $31,359.43 in 1967.

2. The pension payments for the Marcuses were broken down as follows:

|  | 1966 | 1967 |
|---|---|---|
| Edwin | $4,012.57 | $5,860.45 |
| Rose | 3,618.62 | 5,385.18 |
| Jeff | 1,273.82 | 1,076.86 |
| Total | $8,905.01 | $12,322.49 |

3. The total compensation—including salary, bonus, and pension payments—paid to each Marcus was as follows:

|  | 1966 | 1967 |
|---|---|---|
| Edwin | $36,198.80 | $37,219.88 |
| Rose | 35,804.85 | 36,744.61 |
| Jeff | 16,273.82 | 19,076.86 |
| Total | $88,277.47 | $93,041.35 |

4. The Government broke these figures down as follows:

|  | 1966 and 1967 |
|---|---|
| Edwin | $28,000.00 |
| Rose | 25,000.00 |
| Jeff | 12,200.00 |
| Total | $65,200.00 |

district court erred in excluding the taxpayer's payments to a pension plan in determining whether the compensation paid to the Marcuses was reasonable. The Government would seem to suggest that we should not disassociate the two issues and that a determination of reversible error on the second issue would taint the finding on the first issue. We disagree.

■ We turn first to the question of whether the salaries and bonuses paid to the Marcuses were reasonable. Section 162(a)(1) of the Internal Revenue Code of 1954 permits a taxpayer to deduct as ordinary and necessary business expenses "a reasonable allowance for salaries or other compensation for personal services actually rendered." The finding of the district court that the salaries and bonuses paid to the Marcuses were reasonable and, therefore, deductible by the taxpayer under § 162(a)(1), can only be set aside if "clearly erroneous." Commissioner v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d. 1218 (1960).

■ In determining whether compensation is reasonable, a number of factors must be considered, including: the type and extent of the services rendered; the scarcity of qualified employees; the qualifications and prior earning capacity of the employee; the contributions of the employee to the business venture; the net earnings of the taxpayer; the prevailing compensation paid to employees with comparable jobs; the peculiar characteristics of the taxpayer's business. 4A J. Mertens, Law of Federal Income Taxation § 25.69 (1972); Hammond Lead Products, Inc. v. Commissioner, 425 F.2d 31, 33 (7th Cir. 1970). For any given position, moreover, there will, of course, be a range, not unduly narrow, of compensation that could properly be considered "reasonable."

■ The evidence indicated that all of the Marcuses worked long hours and performed their jobs exceedingly well. All three Marcuses worked 60 to 70 hours a week at the store and performed work which would normally require five or six persons. At least one member of the Marcus family was always present at the store during business hours. Each of the Marcuses, moreover, had considerable experience in the field of merchandising. Even before they bought the store in 1950, Edwin and Rose had each worked with women's apparel. After purchasing the store, Edwin and Rose both worked there full-time. Jeff Marcus had worked at his parents' store after school and during summers while he was growing up and had gained substantial experience in the business. The skill and time which the Marcuses devoted to the store were clearly reflected in the store's success. The gross sales increased from $50,000 in 1950, when the Marcuses purchased the store, to $650,000 in the years in question. The inventory at the store, furthermore, turned over at a significantly faster rate than in the average specialty store. The net profit was in excess of 20% of the invested capital.

The taxpayer, despite its success, has, admittedly, never paid dividends.[5] The Government, moreover, introduced testimony showing that certain employees in two stores similar to the taxpayer were paid less than the Marcuses. While such evidence is relevant, it is not conclusive. The Marcuses could justifiably claim larger salaries since the evidence indicated that Edwin's, Incorporated was a more successful store than the two stores to which it was compared and that this success was directly due to the amount and quality of the services rendered by the Marcuses.

---

5. This fact no doubt was a motivational factor in the Government's case on the theory that a part of the compensation was a cloak for the return of equity capital. Cf. Charles McCandless Tile Serv. v. United States, 422

F.2d 1336 (Ct.Cl.1970). While the absence of dividends might be a red flag, it should not deprive compensation demonstrated to be reasonable under all of the circumstances of the status of reasonableness.

While the Marcuses cannot justify the compensation paid to them greater than that paid to the personnel in the stores which were the subject of the Government testimony on the basis that they, the Marcuses, were owners rather than hired employees, nevertheless the ownership is not a factor to be ignored. Whether it would be true in every case or not, it is a fair general assumption that the owners of a business, particularly one which they have built up from scratch, will have the personal incentive not·necessarily shared by hired help, and will devote those extra ounces of energy, thought, and devotion [6] that will spell not merely the difference between success and failure but the difference between success and extraordinary success. Such would appear to be the situation in the case before us.

The Government on this appeal does not appear to emphasize any differences between the compensation that should have been paid to Edwin, who had the title of general manager, and Rose, who only served as manager during Edwin's absence. Nevertheless, in fixing reasonable compensation, the Commissioner set the figure for Rose at $3000.00 less than Edwin. We will assume this had had no male chauvinistic aspects but was derived from titles. In looking at the record, however, we attach little significance to the job appellations which Edwin accorded himself in his testimony. It is obvious that the two owners were shoulder to shoulder in the enterprise. Further, there is ample evidence to support a determination that Rose through her efforts in television—writing, directing, producing, and performing—contributed very substantially to the growth of the store's business, particularly in its bridal department.

Television had come to Eau Claire some twenty years earlier and the store was the first retail establishment using the medium. People responded to this epithalamic advertising from a radius of 100 miles including some from outside Wisconsin. Rose prepared the scripts and memorized them after store hours. She worked with the photographers. The commercials were generally run five evenings a week. She established an·unusual personal relationship in this line of merchandising which itself is highly personal and not to be equated with the sale of a pair of faded jeans. Customers would come in especially to see her. She perhaps unwittingly anticipated a popular recent television jingle, for as she put it, "I closed my program with holding the merchandise toward the camera, and the camera came in on it, and I would say, 'Try it on.' "

We decline to attribute any differentiation between the reasonableness of the compensation paid Edwin and that paid Rose.

Furthermore, we note that the Government conceded that the "salaries found reasonable below were on the very fringes of reasonableness." This concession was made in connection with the impropriety of the exclusion of the deferred compensation but nevertheless, in the somewhat flexible area of determining what exactly is or is not reasonable compensation, would cause us to hesitate further to disagree with the district court on the matter of the reasonableness of the non-deferred compensation.

Finally, the bonuses paid to Edwin and Rose were not a recent invention but had been established in 1955 and the percentage for the bonus had been set at 20% for at least six years prior to the years in question.

Having reviewed the record, we cannot say that the conclusion of the district court was "clearly erroneous." We affirm that part of the district court's ruling which found the salaries and bonuses paid to the Marcuses to be reasonable compensation and, therefore, deductible by the taxpayer.

---

6. "Devotion" as a generic term is broad enough not only to encompass long hours and hard work but if sufficiently enlightened could include matters such as putting economies into effect, good personal relationships with employees and customers, and, in fact, all of the procedures that tend to make a business successful.

■ The Government next contends that the district court erred, as a matter of law, in holding that it need not consider the taxpayer's contributions to the pension plan as compensation in determining whether the Marcuses were unreasonably compensated. We agree with the Government that the district court erred in excluding the pension payments from its consideration.

Deferred compensation, such as contribution to a pension plan, is, nonetheless, compensation. The underlying reason, in fact, for allowing an employer to deduct payments to a pension plan from taxable income is that such payments are in the nature of additional compensation for services rendered by the employee. That the employee's receipt of the money is deferred does not change the payments into something other than compensation. The sum of all compensation, deferred as well as direct, must meet the requirement of § 162 that it be reasonable in amount.

The language of the Code clearly requires such a result. Section 404(a) of the Internal Revenue Code of 1954 permits the deduction of contributions made by an employer to a qualified pension plan only if those contributions satisfy the conditions for deductibility set out in § 162, which, in turn, requires that the contributions be "reasonable compensation."[7] The Treasury Regulation reiterates this requirement:

> "In no case is a deduction allowable under section 404(a) for the amount of any contribution for the benefit of an employee in excess of the amount which, together with other deductions allowed for compensation for such employee's services, constitutes a reasonable allowance for compensation for the services actually rendered." Treas.Reg. § 1.404(a)–1(b).

Courts and a leading commentator have, likewise, noted that pension payments constitute compensation which must be considered in determining whether the total compensation paid to an employee is reasonable. Charles E. Smith & Sons Co. v. Commissioner, 184 F.2d 1011 (6th Cir. 1950), cert. denied, 340 U.S. 953, 71 S.Ct. 572, 95 L.Ed. 687 (1951); Leonard J. Ruck, Inc., 28 T.C. M. 63 (1969); 4A J. Mertens, Law of Federal Income Taxation §§ 25.87, 25B.-25 (1972).

■ The taxpayer, however, urges us to affirm as to the deferred compensation by way of pension plan payments apparently on what is some sort of a harmless error basis. Indeed, the taxpayer asserts that the district court held that all amounts expended for compensation are reasonable. If the taxpayer is suggesting that the payments into the pension plan were held reasonable, the record simply does not support its position. The district court made it explicitly clear that "the court does not consider those payments as a part of the compensation for the purpose of determining whether the compensation was reasonable." We could only say the pension payment amounts were reasonable when added to other compensation by making at the appellate level a factual determination which was not made by the trial court. Because of the clear impact of the law cited above we cannot say the error was harmless.

Therefore, although we affirm the district court's judgment with respect to the reasonableness of the salaries and bonuses, we reverse that part of the court's order dealing with payments to the pension plan. The case is remanded to the district court to determine what part, if any, of the taxpayer's contributions to the pension plan were unreasonable and, therefore, nondeductible.[8] In

---

7. The Government admits that the taxpayer's pension plan was a qualified pension plan under § 401 and payments to it would, therefore, be deductible if reasonable in amount.

8. Pursuant to this court's authority under Circuit Rule 23, this case is remanded to the district court judge who originally tried the case since that judge has already heard the evidence pertaining to the nature and quality of the work performed by the Marcuses.

reversing, we do not in any way intimate any opinion on the question of reasonableness of the pension plan payments; we simply decline to engage in the fact finding process.

Affirmed in part; reversed and remanded in part.