ANTHONY LAMASTRO AND HELEN LAMASTRO, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1594–74.    Filed May 23, 1979.

*Winthrop Drake Thies,* for the petitioners.
*H. Stephen Kesselman,* for the respondent.

FORRESTER, *Judge:* Respondent has determined a deficiency in petitioners' Federal income tax for the taxable year 1970 in the amount of $13,187.43.[1] Concessions having been made, the sole remaining issue for our decision is whether petitioner husband's pension plan contribution made by his wholly owned subchapter S corporation and deducted on its initial short taxable year return, pursuant to section 404(a),[2] constituted a reasonable compensation allowance for services rendered to the extent of $19,207, and, therefore, limited his net operating loss pass-through for said taxable year to $6,589.69.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners are married individuals whose joint Federal income tax return for the year in issue was filed with the District Director, Brooklyn, N.Y. At the time of the filing of this petition, they resided in New Hyde Park, N.Y. The issue herein concerns only Anthony LaMastro, who will hereinafter be referred to as petitioner.

Petitioner graduated from dental school in 1958. He entered the practice of dentistry as a self-employed person on February 15, 1959, and worked continually on a full-time basis in such capacity. On November 20, 1970, petitioner organized A. M. LaMastro, D.D.S., P.C. (hereinafter referred to as corporation), a professional service corporation. Its original assets consisted of $27,000 cash, accounts receivable, and goodwill. All of the stock of the corporation is now owned and has always been owned by petitioner. The corporation maintains its books and records and filed its first short-year return on the cash basis of accounting.

In addition to petitioner, the corporation had five other employees. The employees' names, annual salaries, ages, years

---

[1]This is the stated deficiency in the statutory deficiency notice. The deficiency now sought by respondent is less than this amount because respondent has reduced the amount of the disallowed pension plan contribution deduction by his amended answer and again by the stipulation herein.

[2]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.

employed, and employee status as of December 3, 1970, are given below:

| Name | Annual salary | Age | Years employed | Employee status |
|---|---|---|---|---|
| Aida Rodriguez...................... | $6,240 | 26 | 4 years | full time |
| Karen Witz .......................... | 5,876 | 23 | 4 years | full time |
| Fern Albala......................... | 5,460 | 23 | 9 months | full time |
| Myran Ayari........................ | 1,392 | 33 | 2 years | part time |
| Debra Cassini....................... | 624 | 16 | 8 months | part time |
| A. M. LaMastro, D.D.S........... | 52,000 | 36 | 11 years | full time |

The initial fiscal year of the corporation was a short taxable period of 14 days commencing November 20, 1970, and ending December 3, 1970. The reason for the adoption of the initial short taxable year was to obtain two pension plan contributions by petitioner's corporation prior to the application of the 1969 Tax Reform Act which applied to fiscal years commencing after December 31, 1970.[3]

The corporation validly elected to be taxed as a small business corporation and filed a Form 1120–S, U.S. Small Business Corporation Income Tax Return, for the initial short taxable year beginning November 20, 1970, and ending on December 3, 1970. On that return, it deducted $24,000 as an expense attributable to a contribution for a money purchase pension plan which the corporation established on December 2, 1970. Gross receipts for this period were $5,462.15, and deductions, including pension plan contributions, were $31,258.84, resulting in a net operating loss of $25,796.69 for the initial short taxable year. In order to pay its expenses, including the $24,000 pension contribution for the short taxable period, the corporation borrowed $26,000 from petitioner.

Taxable income or loss of the corporation, as reported on its Form 1120–S, is as follows:

| Taxable year ending | Taxable income (loss) | Taxable year ending | Taxable income (loss) |
|---|---|---|---|
| 12/3/70..................... | ($25,796.69) | 11/29/73.................. | $16,061.24 |
| 12/2/71..................... | (20,206.75) | 11/28/74.................. | 26,682.93 |
| 11/30/72 ................... | (1,510.00) | 11/27/75.................. | 13,732.65 |

Petitioner's net Schedule C profit, direct compensation, and

---

[3]The 1969 Tax Reform Act, under Pub. L. 91–172, sec. 531(a), added sec. 1379, "Certain Qualified Pension, Etc., Plans," which imposed certain limitations on qualified pension plan contributions with respect to small business corporations electing subchapter S treatment by generally restricting such contributions to self-employed plan limits.

deferred compensation (attributable to deductible pension plan contributions by the corporation) for taxable years 1966 through 1975, are as follows:

| Year | Net Schedule C profit | Direct compensation | Deferred compensation | Total |
|------|------|------|------|------|
| 12/31/66[1] | $33,043 | | | $33,043 |
| 12/31/67 | 40,017 | | | 40,017 |
| 12/31/68 | 34,973 | | | 34,973 |
| 12/31/69 | 44,690 | | | 44,690 |
| 1/1/70—11/19/70 | 76,936 | | | |
| 11/20/70—12/3/70 | | $2,000 | $19,973 | 102,909 |
| 12/4/70—12/31/70 | | 4,000 | | |
| 1971[2] | | 53,000 | 19,917 | 72,917 |
| 1972[2] | | 51,000 | 19,973 | 70,973 |
| 1973[2] | | 51,000 | 19,973 | 70,973 |
| 1974[2] | | 52,000 | 20,021 | 72,021 |
| 1975[2] | | 63,000 | 20,469 | 83,469 |

[1] Petitioner testified that during the taxable years 12/3/59 through 12/31/65, his average net Schedule C profit was $20,000.

[2] Because the corporation selected a 52–53-week fiscal year with the taxable period ending on the Thursday closest to Nov. 30, these yearend dates will vary.

For the period prior to incorporation, petitioner's fees averaged approximately $50 per hour. At present, his fees average in the neighborhood of $90 per hour. Also, the nature of petitioner's services and the hours of such services performed for the corporation during the first short taxable year ending December 3, 1970, were essentially no different than those services performed in taxable year 1971.

Throughout his career, petitioner has been diligent in continuing his professional education. Every year he has attended the Greater New York Dental Meeting and has taken from 2 to 3 days of courses during such meeting. He has also completed a 4-month course in periodontal surgery at Queens Medical Center and is on the teaching staff at Booth Memorial Hospital.

On their joint Federal income tax return for the year ending December 31, 1970, petitioners claimed a net operating loss deduction of $25,796.69 with respect to a net operating loss reported by the corporation for its initial short taxable year ending December 3, 1970.

The statutory notice of deficiency increased petitioner's distributive share of income from the corporation by disallowing the corporation's entire $24,000 contribution to the retirement plan trust because "the pension plan failed to meet the

requirements of section 401(a) of the Internal Revenue Code." Respondent has by his amended answer[4] and in reliance upon section 404(a), disallowed only a part of the net operating loss deduction claimed by petitioner. In such amended answer, respondent allowed a deduction to the corporation for $2,000 of the $24,000 pension plan expense originally disallowed. He later stipulated that only $19,207 of the $24,000 originally disallowed was not a valid pension plan contribution deduction by the corporation for its initial short taxable year. This was based upon information respondent obtained from petitioner subsequent to filing the amended answer and on the theory that the balance of the pension plan contribution did not represent a reasonable allowance for compensation for personal services actually rendered.

## OPINION

The statutory notice raised the issue of qualification of the plan itself under section 401(a) while respondent's amended answer admits such qualification but disallows a part of the claimed contribution deductions, relying on section 404(a). Petitioner argues interminably that such answer "is devoid of any suggestion of an 'unreasonable compensation' issue." We find this argument sophomoric. The plain language of the statute defeats it. Section 404(a) reads, in pertinent part:

If contributions are paid * * * under a plan * * * such contributions * * * shall not be deductible under section 162 * * * ; but, if they satisfy the conditions of * * * [sec. 162] they shall be deductible under this section * * *

Section 162 provides:

There shall be allowed as a deduction all the ordinary and necessary expenses * * * , including—
    (1) a reasonable allowance for salaries or other compensation for personal services actually rendered * * *

Thus, allowable deductions under section 404(a) are limited, inter alia, to reasonable compensation. Petitioner had "fair notice" (almost 2 years) of the matter in controversy and the "basis" for respondent's position under Rule 31(a), Tax Court Rules of Practice and Procedure. Cf. *Conley v. Gibson,* 355 U.S.

---

[4]The amended answer was filed on Jan. 16, 1976, almost 2 years before the trial herein.

41, 48 (1957); *Horvath v. Commissioner*, 59 T.C. 551, 555 (1973); *Mills v. Commissioner*, 399 F.2d 744 (4th Cir. 1968), affg. a Memorandum Opinion of this Court; *Rubin v. Commissioner*, 56 T.C. 1155 (1971), affd. per curiam 460 F.2d 1216 (2d Cir. 1972).

Our holding on this issue does not alter the fact that respondent bears the burden of proof on the unreasonable compensation issue since he raised it in his amended answer. Rule 142(a), Tax Court Rules of Practice and Procedure.

Turning to the merits, we note that respondent argues that the case of *Bianchi v. Commissioner*, 66 T.C. 324 (1976), affd. per curiam 553 F.2d 93 (2d Cir. 1977), is directly in point with the instant case. Petitioner, on the other hand, disagrees. *Bianchi* dealt with a taxpayer-dentist who organized a small business corporation under the provisions of subchapter S on November 27, 1970. The corporation then elected an initial taxable year of 7 days during which it adopted a pension plan covering petitioner and his dental assistant. The corporation made its initial contribution to the plan covering the ensuing 12-month period on the last day of its first taxable year from funds loaned to the corporation by petitioner. Because of gross receipts of $1,340 and deductions of $18,286.11, including the pension plan contribution of $16,993.41, petitioner sought to deduct, as the sole shareholder, the entire net operating loss of $16,946.11 for the initial short taxable year on his Form 1040.

We held in *Bianchi* that the contribution, including the compensation paid to petitioner during the initial 7-day taxable year, was unreasonable and properly disallowed, in part, by respondent. Appeal lies in the instant case to the Second Circuit and we are bound to that Circuit's decision in *Bianchi*. *Golsen v. Commissioner*, 445 F.2d 985 (10th Cir. 1971), affg. 54 T.C. 742 (1970).

Under *Bianchi*, we found that a pension plan contribution made on behalf of an employee is compensation, and a deduction for such contribution is allowable under section 404(a) but only if both direct and deferred compensation paid to such employee during the taxable year is reasonable, as provided under section 162(a)(1). See also sec. 1.404(a)–1(b), Income Tax Regs. Thus, the amount of compensation deductible by a closely held corporation is determined by considering the amount of deferred and

nondeferred compensation paid to a given employee. *Edwin's, Inc. v. United States*, 501 F.2d 675, 679 (7th Cir. 1974).[5]

Petitioner argues that he was undercompensated for the years prior to incorporation and should be allowed a deduction for such undercompensated years. At trial, petitioner offered testimonial evidence to establish the amount of his undercompensation. Testifying as an expert in the field of dental economics, petitioner disagreed with our formulation of the value of personal services in *Bianchi*. Therein we stated (66 T.C. at 334–335):

Here, however, it cannot be contended that petitioner was undercompensated when he was self-employed. Petitioner presented evidence that he earned less than other dentists in the area *but the best evidence of the value of his personal services is profit he derived from his own practice.* [Emphasis supplied.]

Petitioner's expert testimony on the question of the value of his personal services focused on the amount of undercompensation that he experienced for the preincorporation years. As a conservative figure, he testified that $120,000 represented the amount of undercompensation because of the requisite capital investment that he had made in himself, in the form of education, during that period. Therefore, petitioner urges this Court to adopt a rule that would not only allow the corporation to take into account, in determining the compensation paid to him, services performed prior to incorporation, but also would require the inclusion of some amount, as a human capital investment, in determining the value of his personal services rendered to the corporation.

For a variety of reasons, we decline to adopt such a rule. It is well settled that the individual identities of different taxable entities must be respected. *Burnet v. Clark*, 287 U.S. 410 (1932); *Dalton v. Bowers*, 287 U.S. 404 (1932). Furthermore, we believe the rule enunciated in *U.S. Asiatic Co. v. Commissioner*, 30 T.C. 1373 (1958), and *Bianchi v. Commissioner*, 66 T.C. 324 (1976), affd. per curiam 553 F.2d 93 (2d Cir. 1977), was correct. These cases produced the rule that corporate deductions were not allowable, with respect to compensation payments, either for periods preceding incorporation or for past undercompensated

---

[5]See also *Rich Plan of Northern New England, Inc. v. Commissioner*, T.C. Memo. 1978–514; *Ad Visor, Inc. v. Commissioner*, T.C. Memo. 1978–141.

retirement benefits earned for periods of self-employment prior to incorporation.

Petitioner's reliance on *R. J. Nicoll Co. v. Commissioner*, 59 T.C. 37 (1972), is misplaced. Therein, we held that payments of compensation by a successor corporation were reasonable for current services and for services rendered by the shareholder-employee in prior years to the corporate employer's predecessor. The distinguishing feature of *Nicoll* from the instant case is that the predecessor corporation accumulated earnings to provide for expansion and, to that end, undercompensated the taxpayer who expected to be adequately compensated in subsequent years by the successor corporation. Cf. *Lucas v. Ox Fibre Brush Co.*, 281 U.S. 115 (1930).

The basis for petitioner's allegation that he was undercompensated, as a self-employed individual, was his testimony of such undercompensation based upon the capital investment in his education for the preincorporation years which he fully expected to recover upon incorporation. Since we adopt the rule of *Bianchi v. Commissioner, supra,* that the best evidence of the value of petitioner's personal services is profit he derived from his own dental practice, we need not decide the question of whether a professional's capital investment, made in his education during preincorporation years, can be recovered as compensation and deductible by a different taxable entity, in years subsequent to his self-employment.

As petitioner correctly points out in the instant case, unlike *Bianchi*, respondent bears the burden of proof. We believe, however, that respondent sustained his burden. The stipulation filed by the parties hereunder discloses the profit that petitioner derived from his practice. Profits from 1966 to 1969 average approximately $38,180.75, and petitioner's average total compensation from 1971 to 1975 paid by the corporation was $74,070. We note that in contrast to these amounts petitioner received aggregate compensation during the taxable year in issue of $102,909.

The source of the corporation's pension plan contribution for the initial short taxable year was from a loan made by petitioner to his corporation. It verges on the chimerical to assume that a corporation with gross receipts of $5,462.15 for the short taxable year has received services from its sole shareholder-employee worth $21,973. Moreover, the parties stipulated that the type

and hours of service petitioner performed for the corporation during the short taxable year from November 20, 1970, through December 3, 1970, were no different from those he performed during any comparable period in 1971.

Petitioner contended that respondent failed in his proof because no evidence of a comparative nature, with respect to the compensation paid others, was produced. Since petitioner, testifying as an expert on the question of comparability of his salary to other dentists within a 10-mile radius of petitioner's practice, offered the only evidence on this point, petitioner argues that respondent's failure to offer any evidence, or to successfully challenge such evidence, is fatal to his case.[6]

We disagree. Such comparative data was not considered the best evidence in *Bianchi v. Commissioner*, 66 T.C. 324, 334–335 (1976), affd. per curiam 553 F.2d 93 (2d Cir. 1977). Nor was it considered to be an element of proof which was the sine qua non in determining the reasonableness of compensation. *Mayson Mfg. Co. v. Commissioner*, 178 F.2d 115, 119 (6th Cir. 1949), revg. a Memorandum Opinion of this Court; *Coe Laboratories, Inc. v. Commissioner*, 34 T.C. 549 (1960); *Chatsworth Stations, Inc. v. Commissioner*, 29 T.C. 1150 (1958), affd. and revd. on other issues 282 F.2d 132 (2d Cir. 1960).

For all of the above reasons, we have no difficulty in holding that the pension plan contribution made by petitioner's wholly owned subchapter S corporation and deducted on its initial short taxable year return ending December 3, 1970, encompassing 14 days, constituted an unreasonable compensation allowance for services rendered by petitioner to the extent of $19,207, thereby limiting petitioner's net operating loss passthrough for said taxable year to $6,589.69. See *Bianchi v. Commissioner*, 66 T.C. 324 (1976), affd. per curiam 553 F.2d 93 (2d Cir. 1977).

Because of concessions,

*Decision will be entered under Rule 155.*

---

[6]We accord very little weight to petitioner's expert testimony on this question because it lacked specificity and amounted to broad generalizations, for instance:

A. Well, I know that there were practices in Queens with gross — grossing $100,000.00 — you know — as a high — as a high — that was considered a high range, and I'm talking about my level of dentistry — my type of office, and my level of dentistry, because that can vary considerably. * * *