BENNIE F. STEWART AND DOROTHY STEWART, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8006-72.    Filed April 8, 1976.

---

*Paul R. Hodgson,* for the petitioners.
*Thomas J. Miller,* for the respondent.

OPINION

STERRETT, *Judge:* Respondent determined additions to petitioners' Federal income taxes for the calendar years 1962 and 1963 as follows:

| Year | Additions to tax pursuant to sec. 6653(b), I.R.C. 1954 [1] |
|---|---|
| 1962 | $3,679.49 |
| 1963 | 2,523.52 |

The sole issue for decision is whether respondent correctly computed such additions, petitioners' tax liabilities for those years having been paid in full at the time the notice of deficiency herein was mailed.

All of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

Petitioners Bennie F. Stewart and Dorothy Stewart, husband and wife, were residents of Tulsa, Okla., at the time they filed their petition herein. Petitioners filed timely joint Federal income tax returns for the calendar years 1962 and 1963 with the District Director of Internal Revenue, Oklahoma City, Okla.

Petitioner Bennie F. Stewart was first contacted by respondent's agents for examination of petitioners' income tax returns for the calendar years 1962, 1963, 1964, and 1965 on October 14, 1966.

On March 26, 1970, petitioners issued a check in the amount of $12,406.02 accompanied by the following letter:

*March 26, 1970*

INTERNAL REVENUE SERVICE
*Fourth National Bank Bldg.*
*Tulsa, Oklahoma*

GENTLEMEN:

We are transmitting herewith the following forms with the required remittances:

Form 1040—U.S. Individual Income Tax Return—Year 1969
   Walter F. and Florence J. Hurt
B. F. and Dorothy Stewart—Check for:
   Additional 1962 Income taxes ____$7,358.98
   Additional 1963 Income taxes _____5,047.04   $12,406.02

---

[1] All statutory references are to the Internal Revenue Code of 1954 as amended, unless otherwise indicated.

Form 1065—U.S. Partnership Return of Income—Year 1969
Stewart & Moss
Hurt & Hurt

Very truly yours,
SHARP & COMPANY [2]
by (S) JACK SHARP, JR.

These items were received in respondent's Tulsa, Okla., office on March 26, 1970.

On June 12, 1972, petitioners, through their attorney, demanded of the appellate conferee of the Internal Revenue Service, Oklahoma City, Okla., by telephone, the return of the $7,358.98 remitted for the calendar year 1962 and the $5,047.04 remitted for 1963.[3] Respondent refused the demand and confirmed his refusal in the letter which follows.

*June 13, 1972*   AP:OC:RKW

MR. PAUL R. HODGSON
*Attorney at Law*
*420 Harvard Tower*
*4815 South Harvard Avenue*
*Tulsa, Oklahoma 74135*

Bennie F. & Dorothy Stewart
Income Tax

DEAR MR. HODGSON:

I have received your letter of yesterday regarding your phone request in behalf of the Stewarts for Internal Revenue Service to return the 1962 and 1963 tax payments they made on March 26, 1970.

As I discussed with you in our second phone conversation yesterday, it is our feeling that these payments fit within the context of Sec. 3.02 rather than 3.03 of Rev. Proc. 64-13 so that they should be assessed rather than refunded. We have therefore directed the Service Center to make these assessments along with the small Sec. 6654 penalties we discussed.

Of course, credit for these tax payments will be given in the forthcoming statutory notice of deficiency.

Sincerely,

(S) R. Keith Ward
R. KEITH WARD
*Appellate Conferee*

On July 3, 1972, respondent assessed $7,358.98 and $5,047.04 in additional income taxes for petitioners' 1962 and 1963

---

[2] Sharp & Co. is a certified public accounting firm.

[3] This demand was confirmed by a letter dated June 12, 1972, and by telegrams bearing the same date to the District Director of Internal Revenue, Oklahoma City, Okla., and the District Director of Internal Revenue, Austin, Tex.

calendar years, respectively. On the same day the $7,358.98 and the $5,047.04 remitted by petitioners for 1962 and 1963, respectively, which respondent had held from the time of his receipt thereof, were applied to the aforenoted assessments.

Solely for purposes of this case the parties agree:

(a) That petitioners understated their taxable incomes for the calendar years 1962 and 1963 on their income tax returns for those years in the amounts of $21,742.52 and $16,460.77, respectively;

(b) That petitioners understated their income tax liabilities for the calendar years 1962 and 1963 on their income tax returns for those years in the amounts of $7,358.98 and $5,047.04, respectively;

(c) That the understatements of taxable incomes and income tax liabilities on petitioners' income tax returns for the taxable years 1962 and 1963 were due to fraud on the part of petitioner Bennie F. Stewart, but not on the part of Dorothy Stewart; and

(d) That the assessment and collection of the additional income tax paid by petitioners for 1962 in the amount of $7,358.98, and the additional income tax paid by petitioners for 1963, in the amount of $5,047.04, were not barred by the statute of limitations.

In his notice of deficiency, mailed to petitioners on July 28, 1972, respondent determined that petitioners were liable for section 6653(b) additions to tax as follows:

| Year ended Dec. 31— | Amount |
| --- | --- |
| 1962 | $3,679.49 |
| 1963 | 2,523.52 |

The sole issue that confronts us is whether respondent erred in attaching the fraud penalty to the difference between petitioners' correct tax liability and the tax liability shown on petitioners' return for each of the years involved herein. Although the issue is narrow in scope, it requires us to examine and analyze the relevant statutory provisions of both the 1939 and 1954 Codes and the gloss placed thereon by a multitude of judicial decisions.

Section 293(b), I.R.C. 1939,[4] provided that the amount of the fraud penalty equaled, "50 per centum of the total amount of the

---

[4] (b) FRAUD.—If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2).

deficiency." Deficiency was defined by section 271, I.R.C. 1939, as follows:

SEC. 271. DEFINITION OF DEFICIENCY.

* * *

(a) The amount by which the tax imposed by this chapter exceeds the amount shown as the tax by the taxpayer upon his return; but the amount so shown on the return shall first be increased by the amounts previously assessed (or collected without assessment) as a deficiency, and decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax; or

(b) If no amount is shown as the tax by the taxpayer upon his return, or if no return is made by the taxpayer, then the amount by which the tax exceeds the amounts previously assessed (or collected without assessment) as a deficiency; but such amounts previously assessed, or collected without assessment, shall first be decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax.

The argument was made in earlier cases that these provisions require the fraud penalty to be computed in accordance with the following formula:

Penalty = 50% × [correct tax (tax shown on the return + amounts previously assessed as a deficiency or collected without assessment − rebates)]

Put in context of the facts before us, the statutory language and the formula, it could be contended, require that taxes paid between the due date for filing the return and the date on which the notice of deficiency is mailed in excess of the tax liability shown on the return be used to reduce the "total amount of the deficiency" to which the fraud penalty attaches.

However, the courts have consistently held that, under the 1939 Code, the fraud penalty was imposed upon the difference between a taxpayer's correct tax liability and the tax shown on his timely return notwithstanding that the taxpayer had filed an amended return after the due date had passed or that portions of his correct liability had been assessed or collected without assessment between the filing date and the date on which the notice of deficiency was mailed. *Maitland A. Wilson,* 7 T.C. 395 (1946); *Romm v. Commissioner,* 245 F.2d 730 (4th Cir. 1957), affg. in part and remanding in part T.C. Memo. 1956-104, cert. denied 355 U.S. 862 (1957).

Underpinning such decisions was the rationale that a taxpayer should not, after fraudulently understating his tax liability, retain the power to avoid the fraud penalty by the simple

expedient of later paying the remainder of his correct tax upon discovering his return was under audit. See *George M. Still, Inc.,* 19 T.C. 1072 (1953), affd. per curiam 218 F.2d 639 (2d Cir. 1955), wherein we said at pages 1076-1077:

2. The petitioner makes the alternative contention that there is no deficiency upon which an addition to tax for fraud can be based because the additional tax was paid and assessed prior to the mailing of the deficiency notice. This contention is not novel. It has been made by other taxpayers who, after filing returns in which items of income were fraudulently omitted, filed amended returns in which the omitted items were included, and paid the additional tax. This Court has consistently held that the "total deficiency" for the purpose of computing the 50 percent additions to tax for fraud under section 293(b) of the Internal Revenue Code, is the difference between the tax liability and the amount shown on the original return, and that a taxpayer who has filed a fraudulent return may not, by subsequently filing an amended return and paying the tax due, bar the respondent from assessing additions to tax for fraud. *Herbert Eck,* 16 T.C. 511; *Harry Sherin,* 13 T.C. 221; *Aaron Hirschman,* 12 T.C. 1223; *Maitland A. Wilson,* 7 T.C. 395; *Thomas J. McLaughlin,* 29 B.T.A. 247. Cf. *P. C. Petterson,* 19 T.C. 486; *Nick v. Dunlap,* 185 F.2d 674 (C.A. 5).

*Any other result would make sport of the so-called fraud penalty. A taxpayer who had filed a fraudulent return would merely take his chances that the fraud would not be investigated or discovered, and then, if an investigation were made, would simply pay the tax which he owed anyhow and thereby nullify the fraud penalty. We think Congress has provided no such magic formula to avoid the civil consequences of fraud.* Stanley A. Anderson, 11 T.C. 841, relied upon by petitioner, does not involve this issue. See also *McConkey v. Commissioner,* 199 F.2d 892 (C.A. 4). [Emphasis added.]

Clearly, respondent's computations herein accord with court-sanctioned practice and the judicial construction of sections 271 and 293, I.R.C. 1939. The precise question we must now answer is whether any changes in this method of computing the fraud penalty were effectuated by the 1954 Code.

Section 6653(b), the fraud penalty provision, provides that, "if any part of any underpayment * * * is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment." The definition of underpayment is contained in section 6653(c) which states:

(c) DEFINITION OF UNDERPAYMENT.—For purposes of this section, the term "underpayment" means—

(1) INCOME, ESTATE, GIFT AND CERTAIN EXCISE TAXES.—In the case of a tax to which section 6211 (relating to income, * * * taxes) is applicable, a deficiency as defined in that section (except that, for this purpose, the tax shown on a return referred to in section 6211(a)(1)(A) shall be taken into account only if such return was filed on or before the last day prescribed for

the filing of such return, determined with regard to any extension of time for such filing), * * *

Finally, section 6211 defines a deficiency as set forth below.

SEC. 6211. DEFINITION OF A DEFICIENCY.

(a) IN GENERAL.—For purposes of this title in the case of income, * * * taxes * * * the term "deficiency" means the amount by which the tax imposed * * * exceeds the excess of—

   (1) the sum of
      (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus
      (B) the amounts previously assessed (or collected without assessment) as a deficiency, over—
   (2) the amount of rebates, as defined in subsection (b)(2), made.

A comparison of these provisions with those of the 1939 Code reveals that they differ from their predecessors in only minor respects, namely in the use of the term underpayment in lieu of the words "total amount of the deficiency" and in expressly circumscribing the definition of return to mean only a timely return. Since "underpayment" is defined as a deficiency (the definition of which is substantially identical to that contained in section 271, I.R.C. 1939), and the latter textual modification merely codifies a well-settled principle of law under the 1939 Code,[5] we are unable to glean any intent on the part of Congress to alter respondent's long-sanctioned (and longstanding) practice of applying the fraud penalty to the difference between a taxpayer's true tax liability and that shown on his timely return. Cf. *Papa v. Commissioner,* 464 F.2d 150 (2d Cir. 1972), revg. T.C. Memo. 1970-90; *Levinson v. United States,* 496 F.2d 651 (3d Cir. 1974), cert. denied 419 U.S. 1040 (1974).

Moreover, our conclusion above comports with the legislative history of sections 6211 and 6653(b) and (c). In their explication of these provisions the relevant committee reports state that the fraud penalty prescribed by section 6653(b) corresponds to the fraud penalty imposed by the then-existing law (to wit, the 1939 Code). H. Rept. No. 1337, 83d Cong., 2d Sess. A419 (1954); S. Rept. No. 1622, 83d Cong., 2d Sess. 591 (1954). They also unequivocally state with respect to the definition of a deficiency that section 6211 "contains no material changes from existing

---

[5] In *Maitland A. Wilson,* 7 T.C. 395, 398 (1946), in referring to sec. 271(a), I.R.C. 1939, we said, "The return referred to undoubtedly means the original return due at the times provided by law."

law." H. Rept. No. 1337, *supra* at A405; S. Rept. No. 1622, *supra* at 573. We do not think it can be gainsaid that Congress intended no substantive changes to result from the enactment of sections 6211 and 6653(b) and (c) and, in view of the legislative history and minor textual changes thereof, hold that respondent's computations herein are entirely proper. *Papa v. Commissioner, supra; Levinson v. United States, supra.*

Finally, the inequity of petitioners' position strikes us as obvious. Had respondent returned petitioners' deposit section 6211(a)(1)(B) [6] would without question be inapplicable and the fraud penalty as computed by respondent would be undisputedly correct. That petitioners paid and respondent assessed the tax concededly due prior to the mailing of the notice of deficiency herein is in our opinion not a sufficient basis upon which to deprive respondent of the fraud penalty to which he would otherwise be entitled.

To make essentially the same point in a slightly different fashion, the thrust of petitioners' argument is to take advantage of the fact that respondent happened to assess the tax payment that was submitted without an accompanying return. We do not believe it a reasonable interpretation of the statute that the result in the instant case should turn upon the fact that an amended return did not happen to accompany the tax payment.

*Decision will be entered for the respondent.*

Reviewed by the Court.

---

[6] Sec. 6211(a)(1)(A) is inapplicable to the instant case since no amended return was filed by petitioners. However, even had amended returns accompanied the payments the amount of taxes shown thereon would have been precluded for consideration in the computation of the fraud penalty by the express terms of sec. 6653(c)(1).