ANGELO J. AND IDA A. BIANCHI, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8152-74.    Filed May 20, 1976.

*Winthrop Drake Thies,* for the petitioners.
*John E. White* and *Kenneth Bersani,* for the respondent.

GOFFE, *Judge:* The Commissioner determined a deficiency in petitioners' 1970 Federal income tax in the amount of $9,554.75 and addition to tax for the negligence penalty (sec. 6653(a), I.R.C. 1954) in the amount of $477.74. "Petitioner" shall hereinafter refer to petitioner Angelo J. Bianchi. The issues for decision are:

(1) Whether petitioner's wholly owned subchapter S corporation, on its initial income tax return for its first taxable year of 7

days, may deduct the full amount of its initial contribution to its pension plan providing pension plan benefit coverage to petitioner and one employee for the ensuing 12 months;

(2) Whether petitioners are liable for the 5-percent addition to tax for negligence under section 6653(a).[1]

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated by this reference.

Petitioners Angelo J. and Ida A. Bianchi resided in Rochester, N.Y., when they filed their petition. They filed their joint Federal income tax return for the taxable year 1970 with the Andover Service Center, Andover, Mass.

On November 23, 1970, petitioner organized Angelo J. Bianchi, P.C., hereinafter referred to as the corporation, a professional service corporation pursuant to the provisions of article 15 of the New York Business Corporation Law (McKinney Supp. 1975). Its assets, upon incorporation, consisted of equipment previously used by petitioner in his dental practice as an individual proprietor, accounts receivable, and good will. All of the stock of the corporation is now owned and has always been owned by petitioner. The corporation has at all times maintained its books and records and filed its Federal income tax returns on the cash basis of accounting.

Petitioner was born on September 17, 1920. He graduated from the Dental College of the University of Buffalo in 1949 and thereafter served an internship at the Eastman Dental Center, Rochester, N. Y., until 1950. After 1 year in private practice, he enrolled in St. Mary's Hospital, Rochester, N. Y., for a full-time, 1-year course in general anesthesia. Following that, he worked at Mt. Morris Tuberculosis Hospital, Mt. Morris, N. Y., for a period of 17 years administering general anesthesia for all types of surgical procedures while at the same time maintaining his dental practice.

For about the past 25 years, Dr. Bianchi has participated in the programs of continuing education of the Rochester Dental Society. In addition, he has attended the annual University of Buffalo dental seminars since their inception some 15 to 20 years ago. Prior to 1970, he took crown and bridge courses and a course

---

[1] All section references are to the Internal Revenue Code of 1954, as amended.

in implantology at the Institute of Graduate Dentists in New York City, N. Y. Petitioner's practice and his services to the corporation were and are a practice of general dentistry with heavy emphasis on crown and bridge work. The only phase of general dentistry in which he has done little work is in the field of orthodontia.

On November 24, 1970, petitioner, as president of the corporation, executed an employees' pension trust agreement. Pursuant to said agreement, a trust account (No. 05-05943-1) was opened on November 27, 1970, at the Bankers Trust Co., Rochester, N. Y. The pension plan and trust agreement of the corporation are adoptions of a master or prototype pension or annuity plan (serial No. 1701843) submitted to the Internal Revenue Service by Security Mutual Life Insurance Co. of New York, 80 Exchange Street, Binghamton, N. Y. 13902, and approved on April 22, 1970.

On November 30, 1970, the pension plan became effective. The plan provided that all employees between the ages of 25 and 56 years were covered; there was no requirement of prior service with the employer in order to establish eligibility under the plan. The corporation agreed to pay the full cost of the plan and to fund it by level annual payments to a trust established under the plan. This method of funding, based on individual level annual payments (also known as split funding) is designed to accumulate, with interest, the amount of money necessary to purchase an annuity which will pay a predetermined benefit at retirement age over the estimated period of retirement. The retirement benefits under the plan were to be 30 percent of the participant's total compensation, based on the average of the 5 highest consecutive years of compensation, plus 20 percent of the participant's total compensation in excess of the amount provided as old age and survivor benefits under the Social Security Act. The normal retirement age was to be 65 years of age, provided the covered individual had participated in the plan for 10 years. Upon death, the plan would pay an amount equal to 70 times the normal retirement benefit. The following pension contributions were to be made in behalf of the corporation's two employees to secure the annual expected benefit:

| Employee | Annual compensation | Expected annual benefit | Allocable pension plan contribution |
|---|---|---|---|
| A. Bianchi _____ | $48,000 | $22,078 | $16,470 |
| S. Kravetz_____ | 7,540 | 2,262 | 523 |

On November 27, 1970, the corporation elected to be taxed under subchapter S of the Code as a small business corporation.

Some time between November 23 and November 30, 1970, petitioner lent the corporation $14,499.57 from his personal bank account in exchange for a demand note, without interest. This money was used by the corporation to make its initial pension plan payment in 1970. This debt of the corporation to petitioner remained unpaid as of November 30, 1970. On November 30, 1970, the corporation deposited the sum of $16,993.41 in the trust account at Bankers Trust Co. for the pension plan contribution.

On February 18, 1971, the corporation filed its initial income tax return (Form 1120-S, U.S. Small Business Corporation Income Tax Return) for the taxable year November 23, 1970, to November 30, 1970, with the Andover Service Center of the Internal Revenue Service. On this return, the corporation deducted the full amount of the initial pension plan contribution, $16,993.41. Gross receipts for this period were $1,340 and deductions, including pension plan contribution, were $18,286.11, resulting in a net operating loss of $16,946.11 for the first short taxable year. The corporation submitted a Form 2950 (Statement in Support of Deduction) relative to the pension plan contribution of $16,993.41 claimed as a deduction on the Form 1120-S for the short taxable year November 23 to November 30, 1970.

The contributions of the corporation to the pension plan allocable to petitioner and claimed as deductions on its corporate Federal income tax returns for its taxable years ending 1970 through 1974 were as follows:

| TYE Nov. 30— | Amount of contribution allocable to Dr. Bianchi |
|---|---|
| 1970 | $16,469.88 |
| 1971 | 17,023.82 |
| 1972 | 16,003.16 |
| 1973 | 16,900.24 |
| 1974 | 21,931.85 |

The corporation's taxable income, or loss, reported on its corporate Federal income tax returns for its taxable years ending in 1970 through 1974 was as follows:

| TYE Nov. 30— | Taxable income (loss) |
|---|---|
| 1970 | ($16,946.11) |
| 1971 | 16,113.93 |
| 1972 | 13,027.89 |
| 1973 | 8,707.05 |
| 1974 | 3,915.97 |

On March 16, 1971, the corporation filed with the District Director of Internal Revenue, Buffalo, N.Y., an application for determination (Form 4462) covering its pension plan adopted in November 1970. The form was dated March 4, 1971, and set forth with particularity the aforementioned provisions of the pension plan. On April 20, 1971, the District Director informed the corporation by form letter that the plan qualified under either section 401 or section 405 of the Internal Revenue Code of 1954.

On their 1970 joint Federal income tax return, petitioners claimed a deduction of $16,946.11 as petitioner's share (all) of the net operating loss of the corporation for its initial short taxable year. On Schedule C of petitioners' Federal income tax returns for the taxable years 1964 through 1970, petitioner reported the following net profit from his dentistry practice:

| Year | Net profit from profession | Year | Net profit from profession |
|---|---|---|---|
| 1964 | $47,620.00 | 1968 | $72,735.00 |
| 1965 | 38,039.00 | 1969 | 75,702.00 |
| 1966 | 53,246.00 | 1970 | [1] 65,570.31 |
| 1967 | 62,450.00 | | |

[1] This amount is for the period Jan. 1, 1970, through Nov. 23, 1970, and was adjusted to $81,473 in the statutory notice. Petitioner has agreed to such adjustment.

His wages from the corporation for its first short taxable year November 23, 1970, to November 30, 1970, were $923.08 and his wages from the corporation for the month of December 1970 were $3,692.32. The services performed for the corporation in the first short taxable year were no different from those he performed in any comparable period in 1971.

In subsequent taxable years, petitioner's wages from the corporation were as follows:

| Year | Wages | Year | Wages |
|------|-------|------|-------|
| 1971 _____ | $48,000.16 | 1973 _____ | $48,000.16 |
| 1972 _____ | 48,223.24 | 1974 _____ | 48,000.16 |

The Commissioner, in his statutory notice of deficiency, disallowed the $16,946.11 net operating loss deduction claimed by petitioner and determined that:

the allowable deduction of such corporation for a contribution paid by an employer to or under its pension plan during its taxable year ended November 30, 1970, is $325.89 (as computed below) since such amount, together with other deductions allowed for compensation for employees covered by the plan, constitutes a reasonable allowance for compensation for services actually rendered. Accordingly, it is determined that the net operating loss of Angelo J. Bianchi, P.C. for the taxable year ended November 30, 1970, is $278.59 and that you are entitled to a net operating loss deduction of $278.59 rather than $16,946.11 as claimed on your return.

Computation of allowable deduction of Angelo J. Bianchi, P.C. for contribution to its pension plan. 7/365 × $16,993.41 = $325.89.

The Commissioner, in the same statutory notice of deficiency, adjusted other items on petitioners' return for 1970. Petitioners agreed to such adjustments and also to imposition of the negligence penalty (sec. 6653(a)) and paid the deficiency in tax and penalty.

## OPINION

Section 404(a) of the Code provides that if contributions are paid by an employer to or under a pension plan, such contributions "shall not be deductible under section 162 (relating to trade or business expenses)" or section 212, but, if such contributions "satisfy the conditions of either of such sections, they shall be deductible" under section 404(a) subject to certain limitations not presently in issue. Petitioner asserts that the statutory reference to "section 162" encompasses only the ordinary and necessary requisites to which all trade or business expenses are subjected. Respondent maintains that both deferred and nondeferred compensation must be subject to the reasonable allowance standards set forth in section 162(a)(1).[2] Sec. 1.404(a)-1(b), Income Tax Regs.

---

[2] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;

Petitioners contend that if Congress intended section 404(a) to be subject to reasonable compensation standards, it would have specifically mentioned section 162(a)(1). They contend, therefore, that section 404(a) should only be subject to the ordinary and necessary standards of section 162(a). However, the very point for which they argue is subject to the same frailties upon which they urge rejection of respondent's position: section 404(a) subjects contributions to the conditions of section 162 without mention of either section 162(a) or section 162(a)(1). We conclude that because only a general reference to section 162 was made by Congress, it must have intended to incorporate all of the conditions of section 162.

Petitioners rely on *Commissioner v. R. J. Reynolds Tobacco Co.,* 260 F.2d 9 (4th Cir. 1958), affg. T.C. Memo. 1956-161, to support their contention that the amount of the contribution is to be examined only as to being ordinary and necessary for the entire contribution and not as to reasonableness on an employee-by-employee basis.

In *Commissioner v. R. J. Reynolds Tobacco Co., supra,* it is unclear as to whether the bonuses paid to the employees in proportion to their shareholdings were additional compensation for the taxable year of payment or whether such payments related to services rendered in prior years. However, as stated by the Court of Appeals, "The Tax Court pointed out that in determining reasonableness, the individual salaries must be considered and not the overall reasonableness of the taxpayer's wage bill." (260 F.2d at 13.) We agree with the recent statement in *Edwin's, Inc. v. United States,* 501 F.2d 675, 679 (7th Cir. 1974), affg. in part and revg. and remanding in part 355 F. Supp. 773 (W.D. Wisc. 1972), "pension payments constitute compensation which must be considered in determining whether the total compensation paid to an employee is reasonable." [3]

Petitioner has the burden of showing that the 1970 payment of $16,667.52 disallowed by respondent was reasonable compensation. *Botany Worsted Mills v. United States,* 278 U.S. 282 (1929). The issue is factual. Respondent contends that we are precluded from examining petitioner's self-employment earnings from his dentistry practice because petitioner was not an "employee" as that word is used in section 404(a). He asserts that

---

[3] *Leonard J. Ruck, Inc.,* T.C. Memo 1969-16.

the Treasury regulations, sec. 1.404(a)-1(b), provide that only the past services of on an *employee* are to be considered in determining the reasonableness of a pension plan contribution. He adds that pursuant to section 1.401-10(b)(3)(i), "The term 'employee', for purposes of section 401, does not include a self-employed individual when the term 'common-law' employee is used or when the context otherwise requires that the term 'employee' does not include a self-employed individual."

Rev. Rul. 69-421 (Part 2(j)(1)), 1969-2 C.B. 59, 64, sets forth respondent's position rejecting the prior service of self-employed individuals—partners and sole proprietors—for both prior service benefits and eligibility requirements. He, therefore, concludes that the prior services of a sole proprietor cannot be considered in determining the reasonableness of compensation, relying on Rev. Rul. 71-502, 1971-2 C.B. 199; Rev. Rul. 69-421, 1969-2 C.B. 59; Rev. Rul. 69-144, 1969-1 C.B. 115; and Rev. Rul. 69-36, 1969-1 C.B. 128. He supports his conclusion with what he views as two practical reasons. First, if the corporation were allowed to take petitioner's prior services as a sole proprietor into account, it would be allowed a deduction for an expense against income reported by petitioner rather than against income produced by the corporation. Such a circumstance, argues respondent, would violate the general principle of allowing deductions only to the taxable entity which generated income relating to such deductions. *U.S. Asiatic Co.,* 30 T.C. 1373 (1958); *Underwriters Laboratories, Inc.,* 46 B.T.A. 464 (1942). Second, he assumes that to consider petitioner's prior services would result in the avoidance of the additional deduction limitations which are imposed by section 404(e) in the case of pension plans benefiting self-employed individuals. Specifically, for the year in question, section 404(e) limited the deduction for self-employed individuals to the lesser of $2,500 or 10 percent of earned income. There was, of course, no such limitation with respect to corporations.[4]

Petitioner contends that respondent's position set forth in Rev. Rul. 69-421, that the prior service of self-employed individuals cannot be considered for the purpose of computing benefit and eligibility requirements of a plan, has been substantially

---

[4] It should be noted that had the corporation adopted a fiscal year ending after Dec. 31, 1970, sec. 1379(b) of the Code would require petitioner to report as income the amount of the contribution in excess of $2,500.

undermined by three decisions. *Farley Funeral Home, Inc.,* 62 T.C. 150 (1974); *Sherman Construction Corp. v. United States,* 358 F. Supp. 446 (E.D. Va. 1973); *United States v. Kintner,* 216 F.2d 418 (9th Cir. 1954). Each of the above decisions has indeed eroded respondent's position of inapplicability of prior service of a self-employed individual for purposes of determining eligibility. Our question here, however, concerns whether the prior service of a self-employed individual should be considered when deciding what amount of contributions to the plan are within the confines of reasonable compensation.

Reasonable compensation is not limited to amounts paid as compensation for services actually rendered in the taxable year of payment. Compensatory payments made by an employer to an employee for past services may be deductible if reasonable without violating the integrity of annual accounting concepts. *Lucas v. Ox Fibre Brush Co.,* 281 U.S. 115 (1930); *R. J. Nicoll Co.,* 59 T.C. 37, 50 (1972). However, in the case before us we are concerned with a current corporate employer which is a taxable entity different from the one which generated petitioner's past compensation. We are faced with two questions: (1) Whether it is proper to examine prior earnings from self-employment to decide if current compensation, both direct and deferred, by a corporate employer is reasonable; and (2) whether compensation from a current corporate employer may include amounts to compensate petitioner for prior unfunded pension costs as a self-employed individual; i.e., undercompensated past services.

Neither of respondent's objections assails the first question of examining self-employment earnings to decide the reasonableness of current corporate employee compensation. Instead, both objections seek to prevent a successor entity from deducting currently amounts which are attributable to services performed for a prior separate taxable entity.

As to the first question, we find that it is proper to make reference to prior self-employment earnings to decide whether current corporate compensation of an employee is reasonable. As discussed above, respondent points out that in section 1.401-10(b)(3)(i), Income Tax Regs., "employee" as used in section 401 does not include self-employed individuals when the context in which it is used dictates otherwise. However, the Code itself does not set forth standards for determining the reasonableness of an

employee's compensation.[5] Section 1.404(a)-1(b), Income Tax Regs., does not specifically disallow reference to prior self-employed earnings in determining reasonableness of a corporate employee's compensation. A plain reading of sections 404(a), 404(a)(8), and 401(c)(1) supports a holding that a self-employed individual should be considered an employee for the limited purpose of determining reasonableness. It cannot be questioned that the clearest evidence of the worth of petitioner's services is petitioner's earnings from his dentistry practice as an individual proprietor.

The record discloses the following:

| Year | Net profit from profession | Direct corporate compensation | Deferred compensation | Total compensation |
|---|---|---|---|---|
| 1964 | $47,620 | | | $47,620.00 |
| 1965 | 38,039 | | | 38,039.00 |
| 1966 | 53,246 | | | 53,246.00 |
| 1967 | 62,450 | | | 62,450.00 |
| 1968 | 72,735 | | | 72,735.00 |
| 1969 | 75,702 | | | 75,702.00 |
| 1970: | | | | |
| 1/1 —11/23 | 81,473 | | | |
| 11/23—11/30 | | $923.08 | $16,469.88 | 102,558.28 |
| 12/1 —12/31 | | 3,692.32 | | |
| 1971 | | 48,000.16 | 17,023.82 | 65,023.98 |
| 1972 | | 48,223.24 | 16,003.16 | 64,226.40 |
| 1973 | | 48,000.16 | 16,900.24 | 64,900.40 |
| 1974 | | 58,000.16 | 21,931.85 | 79,932.01 |

It is apparent that in 1970 petitioner's compensatory income was far in excess of the amounts he earned in prior years and amounts he was to be paid in subsequent years. Petitioner has offered no explanation for this difference.

On its face, the $16,469.88 deferred compensation payment covering a 7-day period was unreasonable. Section 162(a)(1) of the Code requires that the services be "actually rendered," which precludes any contention that the deferred compensation payments were related to future services. Respondent has not invoked his powers under section 446(b) nor has he attempted to reallocate the deduction to petitioner under section 482.

On the authority of *Lucas v. Ox Fibre Brush Co.*, 281 U.S. 115 (1930), petitioner contends that the deferred compensation paid in 1970 related to prior undercompensated years and should,

---

[5] The limitations of sec. 404(e) are unrelated to considerations of reasonableness.

therefore, be deductible. Section 1.404(a)-1(b), Income Tax Regs., is in agreement with *Lucas v. Ox Fibre Brush Co., supra:*

a contribution which is in the nature of additional compensation for services performed in prior years may be deductible, even if the total of such contributions and other compensation for the current year would be in excess of reasonable compensation for services performed in the current year, provided that such total plus all compensation and contributions paid to or for such employee in prior years represents a reasonable allowance for all services rendered by the employee by the end of the current year. * * * [Sec. 1.404(a)-1(b), Income Tax Regs.]

Assuming that petitioner's 1970 current and deferred compensation were reasonable, the tenor of the regulations assumes that the prior services of the employee were performed for the same employer. The same employer was involved in *Lucas v. Ox Fibre Brush Co., supra.*

Generally, the separateness of different taxable entities must be respected. *Burnet v. Clark,* 287 U.S. 410 (1932); *Dalton v. Bowers,* 287 U.S. 404 (1932). This case is not a proper one for establishing another exception to the rule. To the extent that the deferred compensation payment in 1970 represents payment for past undercompensated retirement benefits earned when petitioner was self-employed, we find that *U.S. Asiatic Co.,* 30 T.C. 1373, 1380 (1958), controls our disallowance of the deduction. We held that corporate deductions were not allowable in respect to salary payments and reimbursements of expenses for periods preceding incorporation.

In *R. J. Nicoll Co.,* 59 T.C. 37 (1972), we held that payments of compensation by a successor corporation were reasonable for current services and for services rendered by the shareholder-employee in prior years to the corporate employer's predecessor. The facts in *Nicoll,* although somewhat similar, are clearly and significantly distinguishable. During the early period of the expansion and development of the predecessor corporate business, the shareholder-employee and his brother chose to leave as much money as possible in the corporation in order to provide funds for corporate expansion—they were undercompensated and expected to be adequately compensated in subsequent years. *R. J. Nicoll Co.,* 59 T.C. at 41 n. 4. Here, however, it cannot be contended that petitioner was undercompensated when he was self-employed. Petitioner presented evidence that he earned less than

other dentists in the area but the best evidence of the value of his personal services is profit he derived from his own practice.

As a final issue, we must decide whether the 5-percent addition to tax under section 6653(a) is applicable. In his statutory notice of deficiency, the Commissioner made several other adjustments to which petitioner agreed. Petitioner also agreed to the assertion of the 5-percent negligence penalty as to those items. Petitioner's only ground to contest imposition of the penalty on the underpayment caused by the disallowed operating loss deduction is based on terms of the harshness of the result.

Section 6653(a) does not permit allocating the penalty to specific adjustments made to the return. If "*any part* of any underpayment" is due to fraud, the addition to the tax shall be imposed. *Mensik v. Commissioner,* 37 T.C. 703 (1962), affd. 328 F.2d 147 (7th Cir. 1964), cert. denied 379 U.S. 827 (1964). The fraud penalty applies to the difference between the correct tax liability as redetermined and the tax liability reflected on the return. *Bennie F. Stewart,* 66 T.C. 54 (1976); *M. William Brennen,* 66 T.C. 61 (1976). Both the fraud and negligence penalties are contained in section 6653 of the Code and contain identical language: if any part of the underpayment is due to fraud (negligence). We are presented with no reason as to why the rule as to the negligence penalty should be different from the rules as to the fraud penalty. Therefore, the negligence penalty must be imposed on the deficiency before us.

*Decision will be entered for the respondent.*