PLASTIC ENGINEERING & MANUFACTURING CO., PETITIONER
v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6724–78.     Filed June 30, 1982.

*Richard G. Shechtman*, for the petitioner.
*John O. Tannenbaum* and *Joseph F. Long*, for the respondent.

OPINION

WILBUR, *Judge*: Respondent has determined a deficiency of $6,452.27 in petitioner's Federal income tax for its 1975 taxable year. The sole issue presented concerns whether petitioner properly deducted its contributions to a qualified pension plan.

All of the facts have been stipulated and are found accordingly. A brief summary of the salient facts follows.

Plastic Engineering & Manufacturing Co. (hereinafter referred to as petitioner or Plastic) is a Connecticut corporation having its offices located in New Britain, Conn., at the time the petition herein was filed. Petitioner filed its Federal corporate income tax return for its taxable year ended January 31, 1975, with the Internal Revenue Service Center, Andover, Mass.

Petitioner is in the business of manufacturing container molds for companies who utilize the molds to produce containers for drugs, patent medicines, and the like. From its inception in 1969, and prior to its incorporation in 1974, the business was operated by Mr. Donald R. Seifel, Sr., as a sole proprietorship.

During that period, the net profits of the business, as reported on the individual income tax returns of Mr. Seifel (Schedule C), were as follows:

| Year | Reported net profit | Year | Reported net profit |
|------|--------------------|------|--------------------|
| 1969 | ............. $10,105 | 1972 | ........... $131,172 |
| 1970 | ............. 39,514 | 1973 | ........... 137,341 |
| 1971 | ............. 55,647 | 1974[1] | ........... 73,073 |

[1]Jan. 1 through Sept. 15.

Plastic was incorporated in the State of Connecticut on September 15, 1974, with Mr. Seifel as its president and sole shareholder. At the time of incorporation, petitioner had seven employees.

Plastic used the accrual method of tax accounting. Plastic also chose to report its income on a fiscal year basis, February 1 to January 31, and therefore had as its first taxable year the short period from September 15, 1974 (date of incorporation), through January 31, 1975.

On September 22, 1974, petitioner adopted "The Plastic Engineering and Manufacturing Co. Employers' Pension Plan" (hereinafter referred to as the plan), a defined benefit pension plan which covered every full-time employee of the petitioner. The effective date of the plan was September 30, 1974. The plan year and the accounting period of the trust, of which the plan is a part, ends September 30. Petitioner received a favorable determination letter from the respondent dated June 13, 1977, with a retroactive effective date of September 30, 1974, that the plan qualified under sections 401 and 501 of the Internal Revenue Code.[1]

The plan, which is a prototype plan with the North American Life Assurance Co., is a split funded plan in which the retirement benefits are provided partially by ordinary life insurance policies which are converted into annuities at retirement, and the balance through trust investment.

The following chart reveals the name of each employee of the petitioner during the taxable year in issue; the compensa-

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year in issue, unless otherwise indicated.

tion paid to each employee from September 15, 1974, through January 31, 1975; the annual salary and frequency of payment for each employee for the period September 30, 1974, through September 30, 1975; and the total contribution for the plan year ended September 30, 1975, paid by Plastic to the plan during Plastic's short taxable year September 15, 1974, through January 31, 1975, and which is allocable to each employee:

| Employee's name | Compensation 9/15/74—1/31/75 | Annual salary 9/30/74—9/30/75 | Payment basis | Pension plan contribution |
|---|---|---|---|---|
| R. Fava | $6,348.00 | $14,872.37 | weekly | $1,093 |
| J. Beaupre | 6,898.51 | 16,101.15 | weekly | 846 |
| W. Korfel | 5,491.47 | 12,961.28 | weekly | 685 |
| J. Fredericks | 5,668.96 | 14,177.59 | weekly | 768 |
| R. Beaupre | 4,661.06 | 11,926.84 | weekly | 770 |
| M. Seifel | 4,015.51 | 10,498.83 | monthly | 1,712 |
| D. Seifel | 28,925.00 | 87,300.00 | monthly | 19,985 |
| | 62,008.51 | 167,838.06 | | 25,859 |

All of those named were employed by Plastic from the date of its incorporation through at least September 30, 1975 (i.e., all were with the company for at least 1 full plan year), and all were participants in the plan.

During the period September 15, 1974, through December 31, 1974, Donald R. Seifel, Sr., received salary from the petitioner totaling $22,675. During the calendar year 1975, he received salary from Plastic totaling $94,740.

Petitioner made contributions to the plan in the total amount of $25,858.46 for the period September 30, 1974, through September 30, 1975, all payments actually having been made by December 1, 1974.[2] The $25,858.46 represents the normal cost of funding the 12-month plan year beginning on September 30, 1974.

Plastic claimed a deduction in the amount of $25,858.46 on its corporate income tax return for its short taxable year ended January 31, 1975. In his statutory notice of deficiency,

---

[2]The contribution payments were made as follows:

| Date of payment | Amount |
|---|---|
| Sept. 20, 1974 | $1,100.00 |
| Nov. 15, 1974 | 1,052.96 |
| Dec. 1, 1974 | 23,705.50 |
| | 25,858.46 |

The source of funds for these payments was petitioner's current cash flow.

respondent determined that the deductible contribution under section 404 should be limited to $9,697, "the cost attributable to the fiscal period ending January 31, 1975." Accordingly, Plastic's income was increased by $16,161 ($25,858, claimed, less $9,697, allowed).

Section 404 provides that contributions paid by an employer to a pension plan may not be deducted under section 162 or 212; but, if they satisfy the conditions of either section 162 or 212, they may be deducted under section 404 subject to certain limitations contained within section 404.[3] Section 162(a) allows

---

[3]Sec. 404 provides in relevant portion:

SEC. 404. DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOY-EES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DE-FERRED-PAYMENT PLAN.

(a) GENERAL RULE.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year:

(1) PENSION TRUSTS.

(A) IN GENERAL.—In the taxable year when paid, if the contributions are paid into a pension trust, and if such taxable year ends within or with a taxable year of the trust for which the trust is exempt under section 501(a), in an amount determined as follows:

(i) the amount necessary to satisfy the minimum funding standard provided by section 412(a) for plan years ending within or with such taxable year (or for any prior plan year), if such amount is greater than the amount determined under clause (ii) or (iii) (whichever is applicable with respect to the plan),

(ii) the amount necessary to provide with respect to all of the employees under the trust the remaining unfunded cost of their past and current service credits distributed as a level amount, or a level percentage of compensation, over the remaining future service of each such employee, as determined under regulations prescribed by the Secretary or his delegate, but if such remaining unfunded cost with respect to any 3 individuals is more than 50 percent of such remaining unfunded cost, the amount of such unfunded cost attributable to such individuals shall be distributed over a period of at least 5 taxable years,

(iii) an amount equal to the normal cost of the plan, as determined under regulations prescribed by the Secretary or his delegate, plus, if past service or other supplementary pension or annuity credits are provided by the plan, an amount necessary to amortize such credits in equal annual payments (until fully amortized) over 10 years, as determined under regulations prescribed by the Secretary or his delegate.

In determining the amount deductible in such year under the foregoing limitations the funding method and the actuarial assumptions used shall be those used for such year under section 412, and the maximum amount deductible for such year shall be an amount equal to the full funding limitation for such year determined under section 412.

*       *       *       *       *       *       *

(D) CARRYOVER.—Any amount paid in a taxable year in excess of the amount deductible in such year under the foregoing limitations shall be deductible in the

as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including— (1) a reasonable allowance for salaries or other compensation for personal services actually rendered."

The regulations promulgated under section 404 expand upon this requirement that in order to obtain a section 404 deduction, the requirements of section 162 must first be satisfied:

(b) In order to be deductible under section 404(a), contributions must be expenses which would be deductible under section 162 (relating to trade or business expenses) or 212 (relating to expenses for production of income) if it were not for the provision in section 404(a) that they are deductible, if at all, only under section 404(a). Contributions may therefore be deducted under section 404(a) only to the extent that they are ordinary and necessary expenses during the taxable year in carrying on the trade or business or for the production of income and are compensation for personal services actually rendered. In no case is a deduction allowable under section 404(a) for the amount of any contribution for the benefit of an employee in excess of the amount which, together with other deductions allowed for compensation for such employee's services, constitutes a reasonable allowance for compensation for the services actually rendered. What constitutes a reasonable allowance depends upon the facts in the particular case. Among the elements to be considered in determining this are the personal services actually rendered in prior years as well as the current year and all compensation and contributions paid to or for such employee in prior years as well as in the current year. Thus, a contribution which is in the nature of additional compensation for services performed in prior years may be deductible, even if the total of such contributions and other compensation for the current year would be in excess of reasonable compensation for services performed in the current year, provided that such total plus all compensation and contributions paid to or for such employee in prior years represents a reasonable allowance for all services rendered by the employee by the end of the current year. * * * [Sec. 1.404(a)–1(b), Income Tax Regs.]

As a preliminary matter, we have previously held that the reference to section 162 in section 404 incorporates not only the ordinary and necessary requirement but also the reasonable allowance standard of section 162(a)(1). *Bianchi v. Com-*

---

succeeding taxable years in order of time to the extent of the difference between the amount paid and deductible in each such succeeding year and the maximum amount deductible for such year under the foregoing limitations.

*missioner,* 66 T.C. 324, 329–330 (1976), affd. without published opinion 553 F.2d 93 (2d Cir. 1977).

Respondent contends that in order for a contribution to a pension plan to be deductible under section 404, the contribution must represent compensation for personal services actually rendered by the contributor's employees. Since petitioner's employees actually rendered only 4½ months of personal services as of the close of petitioner's first, short taxable year (January 31, 1975) for which the deduction was claimed, respondent urges that the amount deductible should be limited to 4.5/12's of the deduction sought.

We believe that respondent, in isolating the words "services actually rendered" from the remainder of the regulation in which they are found, and then attempting to apply those words far beyond the area of unreasonable compensation, has overlooked their true import and meaning. Under respondent's interpretation, in order for a contribution to a pension plan to be deductible, that contribution must relate directly to some particular services of an employee which are rendered prior to the close of the taxable year for which the deduction is sought. It is our opinion, however, that the requirement is meant only to insure that those employees, for whom these pension benefits being acquired represent additional compensation, must actually provide services in order to earn the right thereto. The question of what *amount* of services must be rendered in order to justify the overall compensation level is left to the rule that the allowance be "reasonable"—a matter the regulation plainly addresses.[4]

---

[4]Respondent successfully utilized the reasonable compensation clause in *Bianchi v. Commissioner,* 66 T.C. 324 (1976), affd. without published opinion 553 F.2d 93 (2d Cir. 1977), and *LaMastro v. Commissioner,* 72 T.C. 377 (1979), to prevent contributions based on a full year's employment from being fully deducted for a very abbreviated taxable year. In *Bianchi,* the taxpayer therein formed a professional service corporation on Nov. 23, 1970, which subsequently elected to be taxed as a small business corporation under subch. S of the Code. The corporation adopted an employees' pension plan on Nov. 24, 1970, effective Nov. 30, 1970. The corporation deposited $16,993.41 in the pension trust account as a plan contribution on Nov. 30, 1970 (the corporation's having had to borrow this money from its sole shareholder). This amount was exactly equal to the annual contribution necessary to secure the expected annual benefit for the company's two employees, and was based in part on the employees' annual compensation.

The corporation selected as its taxable year the fiscal year ending Nov. 30. Accordingly, a tax return was filed covering the 7 days from Nov. 23 to Nov. 30, for which period the full $16,993.41 contribution was deducted. When aggregated with the rest of the corporation's income and deductions, there was a resultant net operating loss for the "year" of $16,993.41,

More importantly, respondent's interpretation is incompatible with the plain words of the statute. The statute clearly and unequivocally states that contributions are deductible "in the taxable year when paid" as long as that taxable year ends "with or within the taxable year of the trust." And it is clear that the amount paid may be (as it was here) "an amount equal to the normal cost of the plan, as determined under regulations prescribed by the Secretary." See sec. 404(a)(1)(A)(iii).[5]

Plastic contributed and deducted during its taxable year ending within a taxable year of the trust, an amount equal to "the normal cost of funding" the 12-month plan year beginning on September 30, 1974. The regulations define "'normal cost' *for any year*" as "the amount actuarially determined which would be required as a contribution by the employer in such year to maintain the plan." Sec. 1.404(a)–6(a)(2), Income Tax Regs. (Emphasis added.) The regulations go on to provide that "The limitation [under section 404(a)(1)(A)(iii)] *for any taxable year* * * * is the sum of *normal cost for the year* plus an amount not in excess of one-tenth of the past service or supplementary cost." Sec. 1.404(a)–6(a)(3), Income Tax Regs. (Emphasis added.)

Respondent does not argue that the "normal cost of the plan" as determined for purposes of section 404(a)(1)(A)(iii)

---

which the taxpayer claimed in full on his 1970 individual income tax return.

The issue raised by the parties in *Bianchi* was whether the compensation was reasonable. We held that a pension plan contribution made on behalf of an employee is compensation, and a deduction for such contribution is allowable under sec. 404(a) only if both direct and deferred compensation paid to such employee during the taxable year is reasonable. See *LaMastro v. Commissioner, supra* at 382. We went on to find that the contribution, including the compensation paid during the initial 7-day taxable year, was unreasonable.

The facts of *LaMastro* were basically the same except that the taxable year was 14 days and there were five other covered employees. We followed *Bianchi* and again sustained respondent. Respondent recognizes that these cases deal solely with the reasonableness of the compensation withheld (the deduction on behalf of the five other employees was not challenged in *Bianchi*).

We express no opinion as to what the outcome of the present case may have been under the *Bianchi-LaMastro* line of cases, for respondent has never asserted that the compensation received was unreasonable and, on brief, affirmatively states that "Respondent expresses no opinion on the reasonableness of the compensation paid to petitioner's employees * * * respondent maintains that the question of reasonableness does not enter into the issue in this case."

[5]Respondent, apparently because the statute allows the deduction "when paid," does not argue that accrual accounting principles or any of the cases dealing with prepaid expenses have any application.

should be prorated by the number of months in the employer's taxable year so that the contributions made herein would exceed the deductible limit. We note that such an argument would be contrary to section 1.404(a)–14(c)(2), Income Tax Regs. This regulation provides inter alia that the deductible limit under section 404(a)(1)(A)(iii) for a given taxable year of the employer is to be determined "for the plan year commencing within the taxable year." This regulation is clearly consistent with the result we reach today. See also Rev. Rul. 55–428, 1955–2 C.B. 230 (as amplified by Rev. Rul. 56–672, 1956–2 C.B. 295, and Rev. Rul. 80–267, 1980–2 C.B. 139), which respondent maintains on brief is inapplicable to the facts herein.

Given this precise, detailed framework which allows a ceiling on the deductible contribution to a pension trust of the normal cost of funding the plan for a full year, even in situations where the employer's taxable year ends prior to the end of the trust's taxable year, we cannot believe that in imposing the section 162 requirement, Congress envisioned it to serve as an additional limitation on the amount of a contribution which may be deducted in situations involving incongruent years.

As a practical matter, if we denied petitioner the full deduction, the statutory scheme might effectively serve to stifle any attempts to deduct the disallowed amounts in subsequent years.[6] If, for example, petitioner claims them as a deduction for its second taxable year ending January 31, 1976, respondent could object upon the ground that the amounts were not paid into the pension trust during a taxable year ending within the taxable year of the trust, as required by section 404(a)(1) (the last of the three payments was made on December 1, 1974, during the first taxable year).

Alternatively, should Plastic attempt to claim a deduction for 1976 based not on the contribution, itself, as a deductible item in 1976, but rather as a carryover from its 1975 taxable year, petitioner would again face formidable problems. Section 404(a)(1)(D) governs pension trust carryovers. It provides that any amount paid in a taxable year in excess of the amount

---

[6] Sec. 404(a)(1)(A) permits a deduction "In the taxable year when paid, if the contributions are paid into a pension trust."

deductible in such year under the "foregoing limitations" may be deducted in succeeding taxable years. We believe it to be clear that this section covers only amounts not deductible during the prior year due to the operation of the limitations of section 404(a)(1) —specifically subsections (a)(1)(A)(i), (a)(1)(A)(ii), and (a)(1)(A)(iii). The introductory "general rule" proviso of section 404(a) allows a deduction where the conditions of either section 162 or 212 are met, "subject, however, to the *following limitations* as to the amounts deductible in any year." (Emphasis supplied.) It seems that the use of the phrase "foregoing limitations" in the carryover provision is a direct reference to the language of the introductory proviso, and applies to the limitations spelled out *after* the introductory paragraph of section 404(a). The regulations indicate this is so in providing "such excess contributions are deductible to the extent of the difference between the amount paid and deductible in such succeeding taxable year and the limitation applicable to such year under section 404(a)(1)(A), (B), or (C)." Sec. 1.404(a)–7, Income Tax Regs.[7] Accordingly if we sustain respondent and deny the deduction on the theory that section 162 requires that all of the services be rendered when the contribution is made, the carryover provisions might not salvage the deduction for later years.

We, therefore, believe that petitioner has properly interpreted the statute and is entitled to the deduction in issue.

*Decision will be entered under Rule 155.*

---

[7]Sec. 1.404(a)–7, Income Tax Regs., has not been amended to reflect changes by the Employee Retirement Income Security Act of 1974, Pub. L. 93–406, 88 Stat. 829, 921–923, which relettered former subpars. (A), (B), and (C), as (A)(i), (A)(ii), and (A)(iii), respectively.