HARRY A. WOODWARD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Woodward v. Commissioner
Docket No. 7239-88
United States Tax Court
T.C. Memo 1990-7; 1990 Tax Ct. Memo LEXIS 7; 58 T.C.M. (CCH) 1133; T.C.M. (RIA) 90007; January 4, 1990
Wayne Toliver, for the petitioner. Shelley D. Turner, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined a deficiency in petitioner and his then-wife's 1983 Federal income tax of $ 19,425.68, and additions to that tax under section 6653(a)(1)[1] and (2) of $ 1,022.28 and 50 percent of the interest due on $ 20,445.68, respectively. *8 Following concessions by petitioner, the remaining issues for decision are: (1) whether petitioner erroneously excluded foreign earned income in 1983, and (2) whether petitioner is liable for additions to tax under section 6653(a)(1) and (2). FINDINGS OF FACT Some of the facts have been stipulated by agreement of the parties. Other facts have been deemed stipulated pursuant to Rule 91(f). The stipulations of fact and exhibits attached thereto are incorporated herein by this reference. Harry A. Woodward (hereinafter petitioner) was a resident of Hurst, Texas, when he filed the petition in this case. Petitioner and his former wife, Claudia, filed a joint Federal income tax return for 1983. Petitioner and Claudia divorced in 1984. Although the deficiency at issue was determined against both petitioner and Claudia, only petitioner filed a petition in this Court. Accordingly, only he is a party to this action. Rule 60(a). The question of whether Claudia was given proper notice of the deficiency is not before this Court, and we express no opinion thereon. For most of 1983, petitioner was employed by Mobil Overseas Pipeline Co., Inc. (MOPCI), a U.S. corporation. Between *9 February 1980, and September 25, 1983, he was assigned by MOPCI to duty in Saudi Arabia. His 1983 position was as an assistant pump station supervisor at pump stations in the Saudi desert. After conclusion of his duties abroad petitioner returned to the United States. In Saudi Arabia petitioner worked on a rotational schedule comprised of on- and off-duty periods. On-duty shifts lasted forty-two days, and consisted of seven-day, twelve-hour work weeks. Off-duty shifts lasted twenty-one days. Under MOPCI regulations petitioner was required to depart Saudi Arabia when off duty. During each of these periods petitioner returned to his wife and children in Oklahoma. Petitioner spent a total of 180 days in the United States in 1983. While on duty in Saudi Arabia petitioner lived out of the pump stations to which he was assigned. His principal assignment was to "Pump Station 9," located approximately seventy miles from the nearest town. Pump Station 9 housed twelve MOPCI employees: eight foreign nationals and four Saudis. Saudi National Guard troops were also on site. At the pump station petitioner shared a mess hall and recreation room with the other MOPCI employees. Any free *10 time he had was also spent at the pump station. Petitioner did not tour the Saudi countryside or visit its villages. Petitioner's room at the pump station was approximately 10 by 12 feet, with a bathroom, bed, desk, refrigerator, and wall locker. When he traveled to Saudi Arabia for each on-duty shift petitioner took with him only enough clothes and personal effects as he would need for that period. Before departing at the end of these shifts petitioner stored any items he was leaving behind in his room's locker. The room was available for other MOPCI employees' use while petitioner was away. Petitioner paid United States Federal income tax for the year at issue, as well as Saudi Arabian social insurance. He held driver licenses issued by Saudi Arabia and Oklahoma. Petitioner maintained no bank account in Saudi Arabia. His MOPCI paychecks were sent to Oklahoma and deposited in his and his then-wife's joint bank account in that State. During 1983, petitioner's wife and two minor children lived in Duncan, Oklahoma, in a house petitioner and his wife purchased in that year. On his 1983 Federal income tax return, petitioner claimed a $ 14,424 foreign earned income exclusion, *11 a $ 1,357.33 foreign tax credit, a $ 3,012.26 business loss, and a $ 526.25 sales tax deduction. Prior to receipt of the notice of deficiency in this case petitioner agreed to an adjustment of $ 1,020 arising out of his claimed business loss. In the notice of deficiency respondent disallowed petitioner's claimed foreign earned income exclusion and foreign tax credit, and adjusted downward petitioner's claimed sales tax deduction. In addition, respondent determined additions to petitioner's tax under section 6653(a)(1) and (2) based on a determination of petitioner's underpayment of tax on his return which included the previously-settled business loss item. Prior to trial, petitioner conceded the foreign tax credit issue, and stipulated that his correct sales tax deduction should be determined "based on the published sales tax tables for 1983" following resolution of the remaining foreign earned income exclusion issue. OPINION Issue (1): Foreign Earned Income Exclusion
Section 911(a)(1) permits a "qualified individual" to elect to exclude his foreign earned income from gross income. *12 To be a qualified individual a taxpayer must have his tax home in a foreign country and satisfy either a bona fide residence or physical presence test. Sec. 911(d)(1). The parties have stipulated that petitioner did not meet the applicable physical presence test in 1983. As a result, in order to carry his burden of proof petitioner must establish that he satisfied both the tax home and bona fide residence requirements. The bona fide residence test requires a heavier-than-normal measure of proof: it carries with it a "'strong proof' standard." Schoneberger v. Commissioner, 74 T.C. 1016, 1024 (1980). Because we find that petitioner has not carried this burden to prove his bona fide residency abroad, we do not address the tax home issue. The term "bona fide resident" has been described as "an elusive expression and one so peculiarly related to the facts in any given case 'that each new case must be decided on the basis of its own unique attendant circumstances.'" Sochurek v. Commissioner, 300 F.2d 34, 37-38 (7th Cir. 1962), revg. 36 T.C. 131 (1961), *13 quoting in part Nelson v. Commissioner, 30 T.C. 1151, 1153 (1958). In the present case we recognize that petitioner's tenure in Saudi Arabia was both defined and constrained by his work schedule, location, and required departures from that country when off duty. Nonetheless, lack of opportunity to establish bona fide residence does not prove its existence. Petitioner was, in essence, a global commuter in 1983, regularly traveling between his home in the United States and work in Saudi Arabia. We thus conclude, having considered all the facts of this case, that petitioner has not carried his burden to prove that he was a bona fide resident of Saudi Arabia for 1983. Accordingly, we sustain respondent on this issue. Issue (2): Additions to Tax Under Section 6653(a)(1) and (2)
As a preliminary matter, we note that respondent's determination of additions to petitioner's tax under section 6653(a)(1) and (2) based on a determination of petitioner's underpayment on his return, part of which was settled prior to issuance of the notice of deficiency, is neither beyond *14 respondent's authority, nor beyond the jurisdiction of this Court. See Bianchi v. Commissioner, 66 T.C. 324, 335 (1976), affd. per curiam 553 F.2d 93 (2d Cir. 1977). Petitioner bears the burden of proof on this issue. Rule 142(a). Section 6653(a)(1) imposes an addition to tax of 5 percent of an underpayment if any part of the underpayment is due to negligence. Section 6653(a)(2) imposes a further addition of 50 percent of the interest payable on the portion of the underpayment attributable to negligence. Acknowledging the more extensive requirements of section 6653(a)(2), we nevertheless find that petitioner has not carried his burden to prove that he was not negligent within the meaning of section 6653(a) with regard to any of the additions determined by respondent. See Neely v. Commissioner, 85 T.C. 934, 947 (1985). Accordingly, we hold for respondent on this issue. As stated above, the parties stipulated that petitioner's correct 1983 sales tax deduction would follow from the resolution of the outstanding foreign earned income *15 exclusion issue. They did not, however, agree as to what that amount would be. As a result, we must have Rule 155(a) computations in order to resolve this issue, as well as any resultant adjustments to respondent's additions to petitioner's tax. Accordingly, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code, as in effect for the year in issue, and all rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩